ROGERS, Justice.
 

 This is a proceeding for the disbarment of a member of the Bar, and therefore is within the original jurisdiction of this Court. Constitution 1921, Art. 7, sec. 10.
 

 The proceeding was instituted by the Louisiana State Bar Association, appearing through its Committee on Professional Ethics and Grievances, appointed and acting under the provisions of Article 13 of the Articles of Incorporation of the plaintiff association. These articles were adopted and promulgated as rules of this Court on March 12, 1941.
 

 The defendant, Thomas V. Craven, was admitted to the practice of law in the year 1916. The misconduct, alleged and made the basis of the action for his disbarment, was misconduct growing out of the receipt by him of certain sums of money for professional services he agreed to render in
 
 *489
 
 obtaining divorces for various persons, which services he failed to render, although he retained the money received therefor.
 

 In a supplemental petition verified by the Chairman of its Committee, the plaintiff association having shown to the satisfaction of the court that the defendant was absent from the State, William A. Porteous, Jr., was appointed as attorney to represent him. This procedure is authorized by section 3 of Rule 18 of the Rules of this Court. 191 La., p. li. After service of process was made upon him, Mr. Porteous appeared and filed an exception of no right or cause of action and, with reservation of the exception, an answer to plaintiff’s petition. Having responded to. the call to service in the United States Navy, Mr. Porteous resigned and the court then appointed Harry McEnerny, Jr., as attorney.
 

 After issue was joined and upon plaintiff’s motion, the court, acting under section 4 of Rule 18 of its rules (191 La., pp. li and lii) issued an order appointing St. Clair Adams, Jr., Esq., a member of the New Orleans Bar, possessing the necessary qualifications, as Commissioner to hear the evidence and report to the court his findings of fact and conclusions of law.
 

 The petition for defendant’s disbarment alleges five acts of alleged professional misconduct. Those allegations are based on the complaints ,of Mrs. Elda Boudreaux Miranda, Mrs. Laura C. Johnson Pugeau, Mrs. Ruby Ross, Joseph B. Martin, and Russell Fuscia. The Committee of the plaintiff association was unable to reach Mrs. Ruby Ross, Joseph B. Martin and Russell Fuscia by letters addressed to them or through service of process by the sheriff, so that the only evidence the Committee was able to produce before the Commissioner was in reference to the complaints made by Mrs. Miranda and Mrs. Pugeau.
 

 The report of the Commissioner upon the record as made up before him shows the following findings of fact:
 

 “The petition seeking the disbarment of Thomas V. Craven was predicated upon five separate complaints. Evidence was presented as to only two of the complaints and, consequently, the other three should be disregarded. The correspondence between the complainants and the Committee on Professional Ethics and Grievances can be given no effect whatsoever and will not be considered by the Commissioner.
 

 “(a) The complaint of Mrs. Elda Boudreaux Miranda is that on or about September 26th, 1939, she gave Thomas V. Craven Twenty-five ($25.00) Dollars which he accepted as payment in full for legal services to be rendered in obtaining a divorce for her. The petition charges that Mr. Craven retained this money but performed no services of any kind for Mrs. Miranda, and neglected and refused to return the money to her.
 

 “The evidence shows that Mrs. Miranda paid the Twenty-five ($25.00) Dollars to Mr. Craven on September 26th, 1939, and was given a receipt on the reverse side of Mr. Craven’s business card, reading as follows:
 

 “‘Sept. 26, 1939 Rec’d of Mrs. Elda Boudreaux Miranda $25.00 payment in full for legal services (Sgd. Thos. V. Craven)’
 

 
 *491
 
 “Captain Nicholas J. Fardell, of the New Orleans Fire Department, testified that Mr. Craven had agreed to take the case as a favor to him for Twenty-five ($25.00) Dollars, which was to cover his fee and costs, and the contention is made by the Curator appointed to represent Mr. Craven that the Twenty-five ($25.00) Dollars was to cover costs only and, consequently, no fee for legal service is involved. Mrs. Miranda further testified that despite numerous efforts to contact Mr. Craven, she could never
 
 get
 
 in touch with him, her petition for divorce was never filed and Mr. Craven never rendered any services on her behalf. Mrs. Miranda then made her complaint to the Committee on Professional Ethics and Grievances and testified before the Committee at a hearing on December 9th, 1940, at which time her money had not been returned. It is to be noted that the period of time that had elapsed from the date of her payment of the money to Mr. Craven was in excess of a year. Thereafter, on February 10th, 1941, Mrs. Miranda was advised to go to the office of Mr. Edmund G. Burke, an attorney at law in New Orleans, where she was refunded her money and signed a letter addressed to the Committee stating that she -desired to withdraw the complaint.
 

 “Mr. Craven was represented by a Curator appointed by the Court and did not appear as a witness on his own behalf. The Curator was given ample opportunity to have Mr. Craven present as the first hearing was held on June 10th, 1942, and, thereafter, continued for a further hearing on August 3rd, 1942. The only defense or excuse offered for Air. Craven’s actions is-found in the testimony of Captain Fardel! to the effect that Mr. Craven was having domestic trouble at this time.
 

 “(b) The complaint of Mrs. Laura C.. Johnson Pugeau is that on or about January 31st, 1938, she gave Mr. Craven the-sum of Twenty-five ($25.00) Dollars, which, he accepted as payment on account for professional services to be rendered in obtaining a divorce for her. The petition charges'that Mr. Craven retained the money but performed no legal services of any kind for Mrs. Pugeau and neglected and refused to return the money to her.
 

 “Mrs. Pugeau testified that she gave Mr-Craven Twenty-five ($25.00) Dollars on January 31st, 1938, and was given a receipt written on the reverse of Mr. Craven’s-business card, reading as follows:
 

 “ ‘Jan. 31, 1938 Received of Laura C-Johnson Pugeau Twenty Five Dollars on acct. for professional services. Due $25.00' (Sgd. Thos. V. Craven)’ .
 

 “Apparently the lady became impatient and finally in May 1938, succeeded in finding Mr. Craven in his office. At that time Mr. Craven told her that he was too busy to attend to her divorce suit and would, give her money back. He stated that -he would send her a check through the mail, but never did so. When the hearing was-had before the Committee on Professional Ethics and Grievances on December 9th,. 1940, the money had not been paid back. In the early part of 1941 an elderly gentleman called at Mrs. Pugeau’s house and asked if she- would take the return of the
 
 *493
 
 money and stop the charges. She received the return of the Twenty-five ($25.00) Dollars and signed a letter to the Committee requesting that the charges be withdrawn.
 

 “Mr. Craven did not appear as a witness •on his own behalf and presented no defense. The contention is made by the Curator representing Mr. Craven that Mrs. Pugeau accepted Mr. Craven’s withdrawal from the case as attorney and that the matter merely involves the neglect of Mr. Craven to return Twenty-five ($25.00) Dollars which he owed her.”
 

 Based upon his findings of fact, the Commissioner submitted his opinion and recommendation as follows:
 

 “(a) The evidence leaves no doubt in the mind of the Commissioner that Mr. Craven accepted Twenty-five ($25.00) Dollars from Mrs. Elda Boudreaux Miranda and agreed to file a divorce suit for her. Mr. Craven never filed nor performed any legal services on her behalf and, therefore, neglected, failed and refused to return the money until after a hearing had been held on December 9th, 1940, before the Committee on Professional Ethics and Grievances. The Commissioner does not think that it makes any difference whether the money was paid to be used as costs alone or for costs and legal services and is of the opinion that Mr. Craven was guilty of unprofessional conduct. The fact that the money was refunded in February, 1941, after the hearing before the Committee on Professional Ethics and Grievances does not expiate the offense.
 

 “(b) The Commissioner is of the opinion that Mr. Craven accepted Twenty-five ($25.00) Dollars on account and was to be paid an additional Twenty-five ($25.00) Dollars by Mrs. Laura C. Johnson Pugeau upon the completion of the divorce suit which he agreed to file on her behalf. The money was paid to Mr. Craven in his capacity as an attorney at law and his failure to perform the legal services as agreed upon and, thereafter, his neglect, failure and refusal to return the money, in the opinion of the Commissioner, constitute unprofessional conduct. The fact that Mrs. Pugeau was willing to accept back her Twenty-five ($25.00) Dollars in May, 1938, does not alter the situation as the fact remains that Mr. Craven accepted the professional employment and fee on January 31st, 1938, and never performed the legal services nor returned the money. The return of the money in the early part of 1941, after the hearing on December 9th, 1940, before the Committed on Professional Ethics and Grievances, does not ameliorate the gravity of the offense. The interest of the public in being protected against the unprofessional conduct of an attorney far surpasses the individual right of the complainant to withdraw a charge upon being returned the money long wrongfully withheld.
 

 “Recommendation of Commissioner
 

 “In view of all of the circumstances surrounding the complaints and considering the precedents of this Honorable Court, and in particular the recent case entitled ‘In the Matter of Lee J. Novo’, 200 La. 833, 9 So.2d 201, it is the recommendation of
 
 *495
 
 the Commissioner that Thomas V. Craven be suspended from the practice of law for a period of six (6) months.”
 

 After the Commissioner’s report was filed in this court, the defendant, through Harry McEnerny, Jr., his duly appointed attorney, appeared and filed exceptions thereto, alleging that the Commissioner’s findings of fact were not justified by the evidence in the record. In the alternative, defendant, through his attorney, excepted to the recommendation of the Commissioner that the defendant be suspended from the practice of law for six months, since the complaints upon which the recommendation is predicated involve only slight infractions of legal ethics and that the recommendation itself is particularly severe in view of the decisions of this court in other disbarment proceedings. The prayer of the exception to the Commissioner’s report is that the findings of fact and recommendation of the Commissioner be rejected by the court and that the proceeding be dismissed; in the alternative, only in the event the court should accept as correct the Commissioner’s finding of fact and conclude that the defendant should be pun-, ished for misconduct in the matters embraced in the complaints, that the punishment should be confined to a mere reprimand. No objection was filed to the Commissioner’s report by the Committee representing the State Bar Association.
 

 Our examination of the record shows that it amply supports the Commissioner’s findings of fact, and his conclusions of law, based on those findings, are correct.
 

 The complaint of Mrs. Miranda was substantiated by her testimony and by the testimony of Captain Nicholas J. Fardell of the New Orleans Fire Department. The receipt of defendant for the $25 paid to him by Mrs. Miranda for legal services was also offered in evidence. Captain Fardell, however, attributed defendant’s conduct to the fact that he was having domestic trouble at the time. As stated by the Commissioner in his report, this was “the only defense or excuse offered” for defendant’s action in regard to the complaint of Mrs. Miranda.
 

 The complaint of Mrs. Pugeau was substantiated by her testimony and by the receipt for $25 given her by the defendant on account of professional services to be rendered by him. Mrs. Miranda and Mrs. Pugeau admitted they had' received from certain persons, presumably acting for the defendant, the money which they had paid defendant and that they had written letters to the Committee requesting the charges against defendant to be withdrawn since they did not believe defendant was intentionally guilty of any wrongdoing.
 

 Defendant did not appear as a witness before the Commissioner nor did he produce any witness in his own behalf.
 

 There is no question of the power of the court, when the complaint and proof warrant, to disbar an attorney. But if the complaint and proof call for a lesser punishment, there is also no question but that the court may discipline the offender in such manner as it may deem proper.
 

 As this case was presented to the court on the Commissioner’s report and the
 
 *497
 
 ■exceptions thereto, there is no suggestion of disbarment. In fact, we do not understand that the Committee is now insisting that the defendant be disbarred. The court is concerned therefore solely with the disciplining of the defendant for his professional misconduct, as to which the court has a wide discretion. In the exercise of that discretion, the gravity of the charge and the injury suffered are matters that address themselves to the consideration of the court.
 

 It cannot be disputed that defendant was guilty of wrongdoing when he received and retained money for professional services which he failed to render. The fact that, after hearings were had by the Committee on Professional Ethics and Grievances of the State Bar Association on the complaints of Mrs. Miranda and Mrs. Pugeau, the money was repaid and the complainants were thereafter willing to withdraw their charges, does not relieve defendant from the liability already incurred. The court cannot permit matters affecting the misconduct of one of its officers to be settled by private arrangement so as to preclude inquiry into such misconduct.
 

 Attorneys in the performance of the obligations and duties assumed by them must conform to certain ethical and moral standards in relation to the courts, their profession, their clients and the public. And where an attorney violates those standards, the court, upon due proof thereof, must exercise its disciplinary powers as the nature of the offense may require.
 

 The fact that, at the time of the occurrences mentioned in the complaints of Mrs. Miranda and Mrs. Pugeau, the defendant was burdened with domestic troubles and that the money he received from them was returned, serves in some measure to mitigate the offense. While not controlling, some consideration should be given also to the fact that the complainants themselves wrote the Committee requesting that their complaints be withdrawn as they believed defendant's actions were prompted more by neglect than a corrupt motive. Nevertheless, we cannot dismiss this proceeding against defendant with a mere reprimand. Our duty requires that in order to serve as a determent to others, to maintain the prestige of the profession, and to retain the confidence and respect of the public in the administration of justice, we should impose some punishment upon defendant for his transgression of the ethics of the profession.
 

 In discharging that duty we have in mind the generally accepted principle that since the primary purpose of a disbarment proceeding is not punishment but, as we have stated, the protection of the courts and the public, disbarment should never be decreed if any discipline less severe would accomplish the desired result.
 

 In view of these considerations we have concluded that the recommendation of the Commissioner that the defendant be suspended from the practice of law for a period of six months will fully serve the ends of justice.
 

 For the reasons assigned, the report of the Commissioner, St. Clair Adams, Jr., is approved and affirmed, and it is ordered that the defendant, Thomas V. Craven, be
 
 *499
 
 suspended from the practice of law in this State for a period of six months, to begin on the day this decree becomes final; defendant to pay all costs of this proceeding.