HAMLIN, Justice.
This disbarment proceeding, Art. VII, Sec. 10, La.Const. of 1921, concerns Ronald S. Ruiz, a member of the Louisiana State Bar Association, domiciled and residing in the City of New Orleans, State of Louisiana.
*436 On February 1, 1971, the Louisiana State Bar Association, appearing through its Committee on Professional Ethics and Grievances, filed proceedings in this Court in which it alleged “That your Committee on Professional Ethics and Grievances, in accordance with the rules of this Honorable Court, has conducted a full investigation of certain alleged misconduct on the part of Respondent, and after full hearings had, in accordance with said rules, the Committee is unanimously of the opinion that Respondent has been guilty of violations of the laws of the State of Louisiana of sufficient gravity to warrant disciplinary action, and that he has been guilty of such willful violations of the rules of professional ethics as to evidence on his part a lack of moral fitness for the practice of law.” Petitioner prayed that ultimately Ronald S. Ruiz be suspended from the practice of law, his name be stricken from the roll of attorneys, and his license to practice law in the State of Louisiana be cancelled for a period deemed appropriate by this Court. The action was predicated on the following three specifications of unethical and improper conduct served on Ruiz in an original notice of Committee hearings;[1]
“SPECIFICATION No. 1 — Committee File No. 2383
“That in March, 1969, as attorney for Clyde Maize you did correspond with the Montelepre Memorial Hospital and represented to them in writing T hereby guarantee payment in full of this claim upon its settlement.’ In April of 1969 in a second communication to the same hospital you indicated 'Please be advised that I shall personally deduct from the proceeds of the above persons (Clyde Maize included) claims upon settlement of same the amount of money which is due to Montelepre Memorial Hospital for services rendered to each of them and pay this money to you.’ Thereafter *438 you did settle the claim of Clyde Maize but despite the assurances to the Montelepre Hospital you failed, refused and neglected to live up to the personal guarantee given as the attorney to said hospital.
“SPECIFICATION No. 2 — Committee File No. 2581
“On October 28, 1969 through your direct and unjustified solicitation you did unethically procure employment as attorney for Lester Dickerson in his claim for personal injuries received in an accident which occurred on October 26, 1969. In this connection you did without previous invitation visit Lester Dickerson in Charity Hospital in New ' Orleans on October 28, 1969 where you asked that he employ you and to entice him to do so, you promised to pay all his hospital bills, doctor bills and to advance him money to live on. Upon being so employed, you urged Lester Dickerson to leave Charity Hospital and enter Mercy Hospital where you would pay his expenses. You have, in fact, unethically advanced some $1,600.00 on behalf of Lester Dickerson.
“SPECIFICATION No. .3 — Committee File No. 2581
“In the first week of November 1969 through- your direct and unjustified solicitation,' you did unethically procure employment as attorney for Lela Diettel in her claim for personal injuries received in an accident on October 26, 1969. In this connection, you did without previous invitation visit Lela Diettel at the home of her parents in Harahan, Louisiana, where you proceeded to ask her parents to allow you to represent Lela, then a minor. To entice Mr. and Mrs. Diettel to do so, you promised to pay all hospital and doctor bills and to advance money, if needed. You have, in fact, unethically advanced some $500.-00 on behalf of this client.”
On March 2, 1971, Ruiz filed an answer in this Court in which he generally denied that he was guilty of the misconduct alleged in the complaint; he requested that the Committee specify the particular law of Louisiana which he had violated..
On March 26, 1971, Felicien Y. Lozes, Attorney at Law was appointed by this Court to take evidence and report - to ,us his findings of fact and conclusions of law. In accordance with our order, a hearing was held on June 29, 1971, and on November 18, 1971, the Commissioner filed his report (which will be discussed infra) in this Court.
On August 20, 1971, Ruiz filed in.this Court an Exception of No Cause of Action; the peremptory exception was also filed with the Commissioner in' response to his invitation to Ruiz’s counsel, to' submit a memo on the points of law ■ raised *440 in the objections at the inception of the hearing. It averred:
“1.
“Section 6, the Rule under which these proceedings were instituted, is so vague, indefinite and uncertain that it violates due process of law under the Fourteenth Amendment. Exceptor represents that the statute gives no notice of what the law is, how the law is to be complied with, and what standards of conduct are required, and what penalties are provided [for] specific violations alleged against Exceptor in particular. The key criterion for disbarment or suspension is so vague and indefinite and uncertain, as to violaté due process of law secured to Exceptor by the Four-’ teenth Amendment.
“2.
“Exceptor has not been fully informed of the charges against him, all in violation of the Fourteenth Amendment to the United States Constitution.
“3.
“Exceptor has been denied his right to confront witnesses against him by the introduction and use of the hearing Committee transcript in these proceedings.[2]
“4.
“Exceptor has been denied a right to a fair and impartial trial of this cause, all in violation of the Fourteenth Amendment’s guarantee of due process of law.”
The Commissioner made the following finding of facts with which respondent Ruiz and the Louisiana State Bar Association through its Committee on Professional Responsibility concurs: [3]
"Specification No. 1 — Respondent admitted at the hearing that he guaranteed the payment of the hospital bill of his client to the Montelepre Memorial Hospital. (T.R. page 18). Respondent defended his action on the ground that at the time the guarantee was made the client was ready to be released from the hospital and the hospital refused to release the client until such time as a letter of guarantee was received from the attorney. The action was further prompted by the desire on the part of the attorney to obtain an itemized bill and medical reports from the hospital for use in connection with the personal injury claim of the patient.
“Respondent further admitted that the claim against the insurance company was settled and that, at the time of the settle *442 ment he did not withhold the funds from the settlement for the payment of the Montelepre Hospital. Respondent defended his action in not withholding the funds on the ground that he was instructed so to do by his client, since the client apparently did not wish to pay the hospital bill. * * *
“Some fifteen days after the hearing before the Committee on Professional Ethics and Grievances, Respondent did pay the amount due to the Montelepre Hospital (Exhibits R1 and R2).
«* * *
"Specification No. 2 and No. 3. — These specifications were tried together and both involved unethical solicitation of personal injury claims by the attorney and in addition, the unethical advancement of sums of money to clients by the attorney.
“On the trial of this matter Respondent admitted that he had advanced a total sum of $410.00 to two clients (Tr.Comm. No. A 11/18/70) however, it must be noted that these advances were made in order to enable each of the clients to obtain entry to a hospital and were apparently, therefore, loans made to the clients with the expectation that same would be repaid by the client upon settlement of the client’s personal injury case. There is no evidence in the record whatever to indicate that these were sums of money paid to the clients for the purpose of obtaining the client’s business. * '* *
“The evidence against Respondent in connection with the solicitation of the two personal injury claims is most confusing, conflicting and fraught with obvious perjury. The testimony of the witnesses at the committee hearing is-diametrically opposed to the affidavits, made in their complaint to the committee. These witnesses seem to be capable of testifying or signing affidavits to whatever they felt at the particular time would benefit themselves most. From this mass of conflicting testimony there emerges one fact that impressed the ■ Commissioner. This fact is that Respondent did apparently have some acquaintanceship with the various plaintiffs. There also emerges the fact that Respondent apparently did receive telephone calls from someone to go to the hospital to talk with the prospective client on or about October 28, 1969. ‡ ‡
We have read the testimony adduced at the hearings and agree with the Commissioner’s findings supra. We find no error in his ruling permitting the testimony adduced at the November 18, 1970 and December 4, 1970 hearings to be offered in evidence at the hearing of June 29, 1971.
With respect to Specification No. 1,. supra, the Commissioner noted that Ruiz was in no way guilty of or charged with *444 the withholding or embezzling of his client’s funds; he was merely charged with the failure to honor a letter of guarantee given to the Montelepre Hospital that he would, when the personal injury case of his client was settled, withhold the funds from the client’s settlement and pay the hospital. The Commissioner concluded, “However, having given his guarantee in connection with the handling of a case, he was bound to honor same.”
With respect to Specifications Nos. 2 and 3, the Commissioner found that, “The making of a loan to a destitute client, where it is not a consideration for the employment * * * is not of itself ground for suspension or disbarment. 7 C.J.S. Attorney & Client [§ 23] p. 745.” The Commissioner felt “that the committee has failed to prove by clear and convincing evidence that there was, in fact, unjustifiable and unethical solicitation by the lawyer ■of the clients in Specification No. 2 and No. 3.” He concluded, “Tested by the above standard the Commissioner feels that that portion of Specification No. 2 and No. 3 with respect to the unprofessional ■conduct in the solicitation of personal injury claims against Respondent should be dismissed.”
The Commissioner found no merit in the peremptory exception supra; he was also of the ■ opinion that it was not filed timely. The Commissioner’s report concluded:
“Bearing in mind the principle stated by this Court in In re Craven, 204 La. 486, 15 So.2d 861, In Re Reed, 207 La. 1011, 22 So.2d 552, and in L.S.B.A. vs. Cox, 252 La. 978, 215 So.2d 513, to the effect that the primary purpose of disbarment proceedings is not punishment but the protection of the courts and the public, and disbarment should not be decreed if discipline less severe would accomplish the desired results, the Commissioner recommends to the Court that Respondent, who is 31 years of age and admitted to practice for four years, be disciplined by being suspended from the practice of law for a period of six months.”
Acting under our exclusive original jurisdiction, Art. VII, Sec. 10, La.Const. of 1921, we heard oral argument in this matter.
The Louisiana State Bar Association, appearing through its Committee on Professional Ethics and Grievances, argued in this Court and states in brief that:
“Petitioner in its concurrence excepted to the findings of the Commissioner that the advancement of funds to his client was not a violation of the rules of ethics by an attorney. It now reiterates its position as set forth in its concurrence, that such conduct is in direct violation of this Court’s Committee’s formal promulgated Opinion No. 305. It is noted that this opinion was originally promulgated in June 1967.”
*446 Petitioner concludes in brief as follows:
“Respondent has been proven guilty of such violation of the laws of this State relating to the professional conduct of attorneys as to indicate a question as to his moral fitness for the practice of law.
“In view of this guilt, the petition suggests that the Respondent be suspended from the practice of law for a period of at least six (6) months commencing from the date of the Court’s decree.
“Further, Respondent should be ordered to pay the costs of these proceedings including but not limited to the reporter fees for the Committee hearings of November 18 and December 4, 1970 and the Commissioner’s hearing of June 29, 1971. "Should the Court decree that the Respondent be suspended for any period of time from the practice of law, his reinstatement, in addition to the passage of such period of time, should be conditioned on his making reimbursement of the costs of these proceedings as set out above.”
Respondent Ruiz urged in oral argument to this Court and submits in brief that his constitutional rights have been violated by the manner in which the instant proceedings were conducted; he reiterates the arguments advanced in his peremptory exception supra. Ruiz defends himself with respect to the allegations of Specifications Nos. 1, 2 and 3, supra. He concludes in brief as follows:
“The respondent states that he has suffered much loss of livelihood, much degradation, much mental anguish and torment at the publication of the pending disbarment proceedings in the Bar Journals. Considering these penalties suffered in advance of being disbarred, the respondent is entitled to credit for ‘time served’ and should not be assessed any further disciplinary action.
“Respondent further asserts his constitutional safeguards relative to due process as a bar from disciplinary action in this matter. These safeguards have been violated in this matter.”
There is no need for us to lengthen this opinion with a discussion of Ruiz’s contentions with respect to the alleged unconstitutionality of the rules and canons of the Louisiana State Bar Association. This Court in the case of Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413 opinion handed down January 17, 1972, Rehearing refused February 21, 1972, passed upon contentions similar to those advanced in respondent’s peremptory exception supra. We concluded that the rules of the Louisiana State Bar Association with respect to disbarment proceedings afford a respondent complete due process of law — - notice, hearing, and the right to defend oneself. A respondent subject to disbarment proceedings such as the instant one suffers no violation of his constitutional rights.
*448 “ * * * In disbarment proceedings, on the contrary, the evidence not only as to the act which forms the basis of the attorney’s unprofessional conduct but also as to the motive with which the act was done, must be clear and convincing. * * The reason for this rule is that the proceeding is not so much for the purpose of seeking the punishment of the man as it is for the preservation of the integrity of the courts and for the salutary effect it has upon the other members of the bar who practice before it. As expressed in the case of Ex parte Wall, 107 U.S. 265, 2 S.Ct. 569, 588, 27 L.Ed. 552, ‘The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. Undoubtedly, the power is one that ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct which affect the standing and character of the party as an attorney.’ And as expressed in the case of State ex rel. State Bar Ass’n v. Finn, 32 Or. 519, 52 P. 756, 759, 67 Am.St.Rep. 550, ‘It is not the purpose of proceedings of this character to punish the accused attorney, as in matters of criminal cognizance, but they are inaugurated and entertained as “necessary for the protection of the court, the proper administration of justice, and the dignity and purity of the profession, and for the public good, and the protection of clients,” ’ citing Weeks on Attorneys at Law, Section 80.” In re Novo, 200 La. 833, 9 So.2d 201, 205 (1942). See In re Craven, 204 La. 486, 15 So.2d 861; Louisiana State Bar Association v. Cox, 252 La. 978, 215 So.2d 513.
The facts, supra briefed by the Commissioner, with respect to Specification No. 1 disclose that Ruiz was dilatory in paying a hospital bill which he had guaranteed for a client; they also show that the hospital relied on Ruiz’s guarantee, and it was only after the Committee hearings supra that Ruiz paid the bill.
We find that Ruiz was remiss-in the manner in which he handled the business transaction set out in Specification No. 1, but we do not find that his action of slow payment is a ground for suspension of his privilege to practice law. A reprimand will suffice.
The facts, briefed supra by the Commissioner, in connection with Specifications Nos. 2 and 3 disclose that the testimony adduced at that hearings was contradictory, confusing, and somewhat incoherent. We have read the testimony and find that Specifications Nos. 2 and 3 were not proved. We agree with the Commissioner that the evidence was not clear and convincing. We also agree with the Commissioner’s conclusion that the Specifications should be dismissed.
*450 Having made the finding that Specifications Nos. 2 and 3 were not proved, there is no necessity at the present time for us to pass on petitioner’s contention that the conclusion of the Commissioner that the advancement of funds to a client by an attorney is not a violation of the rules of ethics is erroneous.
This Court has wide discretion in disciplining an attorney; our principal concern is misconduct. In Re Craven, supra. We consider the gravity of the charge and the injury suffered by others.
Under the facts found by the Commissioner, with which we agree, we conclude that a reprimand is sufficient discipline for respondent Ronald S. Ruiz. We reprimand him with an observation that the legal profession is an honorable and dignified one; it is one of responsibility and demands that its members be persons of integrity who promptly keep their word. Respondent must realize that his future conduct in the practice of law should be more in accord with the amenities of his profession and the propriety required of a member of the Louisiana State Bar Association.
For the reasons assigned, Ronald S. Ruiz is hereby reprimanded; otherwise, the disbarment proceeding against him is dismissed at his costs.
DIXON, J., concurs.

. On October 6, 1970, the Committee on Professional Ethics and Grievances of the Louisiana State Bar Association notified Ronald S. Ruiz by certified mail that it had undertaken an investigation of certain conduct on his part as a member of the Bar of Louisiana in order to determine whether or not he had been guilty of a violation or violations of the laws of the State of Louisiana relating to the . professional conduct of lawyers and to the practice of law, or whether or not he had been guilty of a willful violation of the rules of • professional ethics of sufficient gravity as to evidence on his part a lack of moral fitness for the practice of law. Ruiz was informed that a hearing would be held on November 18, 1970 at which he would be given an opportunity to defend himself.
Two Committee hearings were held,. November 18, 1970 and December 4, 1970; thereafter, the Committee was unanimously of the opinion that Ruiz had been guilty of violations of the laws of Louisiana of sufficient gravity to warrant disciplinary action, and that he had been guilty of such willful violations of the Rules of Professional Ethics as to evidence on his part a lack of moral fitness for the practice of law.

. The evidence taken, at the investigatory hearings before the Committee on Professional Ethics and Grievances on November 18, 1970 and December 4, 1970 was filed in evidence at the hearing before the Commissioner.

. The Commissioner’s report contains facts, opinions, conclusions of law, application of law, and recommendations. We have culled from the report what we think are the pertinent facts found.