423 So.2d 1126 (1982)
LOUISIANA STATE BAR ASSOCIATION
v.
Malcolm G. MUNDY, Jr.
No. 81-B-0094.
Supreme Court of Louisiana.
November 29, 1982.
*1127 Wood Brown, III, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick, R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Phillippi P. St. Pee', Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Natchitaches, Thomas O. Collins, Jr., Richard A. Deas, New Orleans, for Louisiana State Bar Ass'n.
Philip S. Brooks, Metairie, for Mundy.
Malcolm G. Mundy, Jr., pro se.

DISCIPLINARY PROCEEDING
WATSON, Justice.
This is a disciplinary proceeding brought by the Louisiana State Bar Association against one of its members, Malcolm G. Mundy, Jr.
Mundy was accused of client neglect and nonperformance of his professional duties. The Committee on Professional Responsibility of the Bar Association held an investigatory hearing on March 10, 1980. Mundy was found guilty of three charges, all violations of Disciplinary Rules 1-102[1] and 6-101(A)(3)[2] of the Code of Professional Responsibility of the Louisiana State Bar Association:
(1) Morris Johnson paid Mundy $175 to obtain a transcript and attempt to get a new trial for his son, Morris Johnson, Jr. Mundy failed to perform those services. Restitution was made to Morris Johnson on September 4, 1981, seventeen months after the investigatory hearing and three years after the money was paid. Johnson has "no bad feelings" toward Mundy. (CR-6)
(2) William T. Lavene paid Mundy $300 to represent him at trial of a criminal charge on September 22, 1975. Mundy failed to appear as counsel for Lavene on the day set for trial. Mundy made a refund of the $300 on April 6, 1982, seven years after the payment. Lavene bears Mundy "no ill-will". (CR-4)
(3) Mrs. Pearl Spears hired Mundy to represent her son and nephews for $300 and was dissatisfied with his representation. Mundy agreed to give her a $150 refund, which she had not received as of April 8, 1976, when she wrote a letter of complaint. The partial fee was returned on January 15, 1982.
In all three instances, other counsel was obtained. Mundy did not contest his guilt on these charges and said they were the result of alcoholism. A petition for disciplinary action was filed by the Committee on Professional Responsibility on January 13, 1981. A commissioner was appointed and a hearing held on April 19, 1982. The commissioner recommended a six month suspension for Mundy and the committee suggests that a longer period of suspension would be appropriate.
Mundy said he had never been intoxicated in court, electing not to appear rather than show up drunk. He is now a member of Alcoholics' Anonymous. There are eighty A.A. units in the city and he regularly attends Wednesday meetings at a church *1128 on Metairie Road. He also periodically goes to a Friday night meeting, averaging two to two and a half meetings a week. Mundy takes Antabuse pills, prescribed by Dr. Frank Minyard, and has kept regular office hours for two and a half years. He has been a diligent practitioner since October of 1979 when he was released from the chemical dependency unit at the Metairie General Hospital. Dr. Jack Ruli verified that Mundy completed a twenty-eight day program at Metairie General Hospital.
Mundy said his tardiness in making restitution was due to his financial difficulties when he came out of the hospital. He had a $4,000 bill, no hospitalization insurance and a nonexistent law practice. One of his ex-wives has three children, all of an age to require support, and Mundy was almost arrested for past due child support. Because he was deep in debt and his practice had slipped when he went into the hospital, he was unable to earn much money when he got out. The Bar Association's efforts to serve Mundy at his present business address, 2638 Tulane Avenue, were evaded because he thought they were creditors.
Judge Jerome Winsberg of the Orleans Criminal District Court, testified that Mundy has practiced in his court during the ten years he has been on the bench. Initially, Mundy's representation was highly competent, but it later became obvious that he had a drinking problem. Judge Winsberg testified that Mundy had a slow deterioration during his years of drinking and was sometimes unavailable for arraignments. Since January of 1980, Judge Winsberg said that Mundy is available, able and prepared in his cases and has had a complete turn around in his demeanor. Mundy does not appear to be drinking and has had no problems in representing his clients.
Judge Charles Ward, a member of the Orleans Criminal District Court for ten years and now a member of the Fourth Circuit Court of Appeal, testified that Mundy had initially been very competent and skilled but then began missing courtroom appearances and lost some of his diligence. Since January of 1980, Mundy has resumed good work habits and became a competent practitioner. To Judge Ward's knowledge, Mundy has not been drinking since January of 1980.
Judge Edward A. Haggerty, Jr., testified that Mundy is now clean, neat and sober but had a drinking problem prior to his change in January of 1980.
Judge Louis P. Trent of the New Orleans Traffic Court testified that Mundy had been charged with alcohol related driving offenses over a period of several years. Judge Trent ordered Mundy to submit to treatment or go to jail. As a result of the treatment, Judge Trent felt that there had been a complete change in Mundy. To this judge's knowledge, Mundy has not been drinking since January of 1980 and has had no more driving while intoxicated charges.
Albert Hyman, a publisher, testified that he is an alcoholic but, like all alcoholics, had a great deal of difficulty in admitting that condition. Hyman, a member of A.A., attends three days a week and said that he had seen Mundy at the meetings frequently. Hyman said he would know immediately if Mundy had been drinking.
Edward Koch, Jr., a practicing attorney and an alcoholic, testified that he had known Mundy since 1958. In Koch's opinion, the practice of forcing alcoholics to seek treatment is a good one, which statistics show save seven years of an alcoholic's life. Koch was willing to swear that Mundy has not been drinking since January of 1980. Whenever Koch has attended the Wednesday A.A. meeting in Metairie, Mundy has been present.
Edward J. Villere, an attorney, testified that he was associated with Mundy in use of office space when Mundy began to drink excessively in 1966 and 1967. Mundy would not show up at the office intoxicated but would sometimes not appear. Villere sees Mundy at least two or three times a week. Mundy has not been drinking since January of 1980. His legal ability has always been excellent.
Judge Rudolph Becker, III, of the Orleans Criminal District Court testified that he *1129 first met Mundy in the District Attorney's office under Garrison when they both served as Assistant D.A.'s. In his opinion Mundy was extremely capable until he developed his drinking problem. Since January of 1980, Mundy has done a good, capable and courteous job. Judges Ward, Winsberg and Becker observed that Mundy once had a drinking problem outside the courtroom but had never appeared in court intoxicated.
Judge Alvin V. Oser of the Orleans Criminal District Court, who was unable to be present for the hearing, attested by letter to Mundy's rehabilitation and present competence. Judge Jim Garrison of the Fourth Circuit Court of Appeal also urged that Mundy be given another chance because of his sobriety.
It is clear that Mundy at one time was unable to properly discharge his professional duties. However, all the evidence indicates that he has overcome his addiction to alcohol and is completely rehabilitated. Compare Louisiana State Bar Ass'n v. Heymann, 405 So.2d 826 (La.1981). Even during his period of addiction, Mundy had too much respect for the courts to appear in an intoxicated condition and exercised some measure of self-control.
It would be better, both for the profession and Mundy, if action had been taken by the Bar Association during the period of his addiction. Mundy admittedly dodged the Bar Association's process servers, but it is difficult to understand why he could not be located for such a protracted period of time.
All three of the charges against Mundy involved failure to act on behalf of a client after acceptance of a fee. This is an extremely serious matter, but it does not involve the type of deliberate criminal activity found in many other cases. While restitution was not made timely, Mundy had severe financial problems. Under these circumstances, the inference that payment would not have been made without disciplinary action is not warranted. Compare Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975). Fortunately, all three of the clients obtained other counsel and did not suffer from Mundy's neglect except for being deprived of their money. The sums involved, though small, were important to the clients: none of them was wealthy. Despite the gravity of the misconduct, it is not as blatent a violation as conversion of a client's funds. Compare Louisiana State Bar Association v. Van Buskirk, 249 La. 781, 191 So.2d 497 (1966) and Louisiana State Bar Association v. Klein, 253 La. 603, 218 So.2d 610 (1969).
The penalty imposed should protect the courts and the public. Louisiana State Bar Association v. Klein, supra; In re Craven, 204 La. 486, 15 So.2d 861 (1943). Craven dealt with acceptance of fees and failure to perform, exactly the conduct here. Defendant Craven's only defense was domestic troubles and he was suspended for a period of six months. While domestic difficulties can certainly affect professional performance, they are generally not as heavy a burden as the disease of alcoholism. This is not a case where there has been past disciplinary action. Compare Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413 (1972). Two of the people whom Mundy wronged have apparently forgiven him for his conduct. Attorney discipline is intended to safeguard the courts and the public. It is protective rather than punitive. If Mundy did not now have his alcoholism under control, disbarment would be an appropriate punishment. However, because of his rehabilitation, disbarment would serve no purpose. It would have little effect on other members of the bar or the integrity of the courts. Louisiana State Bar Ass'n v. Kramer, 420 So.2d 1110 (La. 1982); Louisiana State Bar Ass'n v. Edwards, 387 So.2d 1137 (La.1980).
The Louisiana jurisprudence relied on by the committee includes: Louisiana State Bar Association v. Van Buskirk, supra; Louisiana State Bar Association v. Klein, supra; and Louisiana State Bar Association v. Jacques, supra, all distinguished herein. More similar is Louisiana State Bar Association v. Causey, 393 So.2d 88 (La.1980) which concerned neglect of a legal matter. *1130 However Causey accepted a $2,000 fee, which the commissioner found excessive; Causey's client remained in jail for eight and one-half months while the attorney procrastinated; and there was apparently no excuse for Causey's failure to act. He was suspended for ninety days. Mundy's clients were not seriously prejudiced and his neglect resulted from the disease of alcoholism.
The committee cites Matter of Fogel, 422 A.2d 966 (D.C.1980); Matter of Daggs, 307 N.W.2d 66 (Mich.1981); and Matter of Snyder, 428 N.E.2d 17 (Ind.1981). None of these cases is precisely in point.
In Snyder the attorney damaged his client by failure to carry out the contract of employment. Specifically, the attorney advised his client that she was divorced. She remarried and subsequently learned that proceedings to dissolve her marriage had never been instituted. In the instant case, the clients' cases and concerns were not prejudiced.
Daggs involved negligence in handling client matters. However, the attorney who was suspended for one year also had a 1970 reprimand and a 1971 suspension. He apparently lacked credibility at the hearing and there was no evidence that his failure to act on behalf of the clients was the result of an addiction from which he had been rehabilitated.
Fogel also involved a negligent failure in conduct of legal matters. However, the attorney was also guilty of affirmative misrepresentations to court personnel and had prior disciplinary sanctions. There was no evidence that he had been rehabilitated. Fogel is, in any event, irrelevant because the D.C. Court of Appeal, under its rules, has a limited standard of review in these cases. In Louisiana the ultimate responsibility for attorney discipline rests with the Supreme Court. Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La.1976).
There was no criminal offense here. Compare Louisiana State Bar Ass'n v. Kramer, supra, and Louisiana State Bar Ass'n v. Stevenson, 356 So.2d 408 (La.1978). Mundy's actions were not willful but resulted from his addiction. Disciplinary action protects against future misconduct by an appropriate penalty. Louisiana State Bar Ass'n v. Summers, 379 So.2d 1065 (La.1980); Louisiana State Bar Ass'n v. Jones, 372 So.2d 1186 (La.1979). Since all the evidence indicates that Mundy has been rehabilitated and is now conducting his practice in a responsible manner, the courts and the public will not suffer from his continuation in the practice of law. Suspension is inappropriate, and the proper penalty is a public reprimand for Mundy's violations of the Code of Professional Responsibility. Compare Louisiana State Bar Ass'n v. Edwards, supra.

DECREE
For the reasons assigned,
IT IS ORDERED, ADJUDGED AND DECREED that Malcolm G. Mundy, Jr., be publicly reprimanded for his violations of the Code of Professional Responsibility as set forth in this opinion. All costs are assessed to respondent, Malcolm G. Mundy, Jr.
NOTES
[1] Rule 1-102, Code of Professional Responsibility provides:

"(A) A lawyer shall not:
"(1) Violate a Disciplinary Rule.
"(2) Circumvent a Disciplinary Rule through actions of another.
"(3) Engage in illegal conduct involving moral turpitude.
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
[2] Rule 6-101(A)(3) of the Code of Professional Responsibility provides:

"(A) A lawyer shall not:
* * * * * *
"(3) Neglect a legal matter entrusted to him."