491 So.2d 1328 (1986)
LOUISIANA STATE BAR ASSOCIATION
v.
Edward C. ALKER.
No. 85-B-0765.
Supreme Court of Louisiana.
June 23, 1986.
Rehearing Denied September 4, 1986.
Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Carrick R. Inabnett, Monroe, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Frank J. Gremillion, Baton Rouge, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, Gerard F. Thomas, Jr., Natchitoches, for applicant.
Edward C. Alker, in pro. per.
WATSON, Justice.
This is a disciplinary proceeding brought by the Louisiana State Bar Association through its Committee on Professional Responsibility against attorney Edward C. Alker. The Supreme Court of Louisiana has original jurisdiction. LSA-Const. 1974, Art. V, § 5(B).[1]
The Committee on Professional Responsibility held four investigative hearings. Following the hearings, the Louisiana State Bar Association petitioned for disciplinary action, and Commissioner Jo Harriet Strickler was appointed to conduct an evidentiary hearing. She found Mr. Alker guilty on five of the seven specifications of misconduct and recommended disbarment. The Louisiana State Bar Association, through the Committee on Professional Responsibility, agrees with the Commissioner's findings of fact; disagrees with the Commissioner's conclusion as to Specification No. 2; and concurs with the recommendation for disbarment.

SPECIFICATION NUMBER ONE
Alker is charged with misconduct in connection with his representation of Mrs. Irma Stogner in a worker's compensation case. Mrs. Stogner agreed to settle her claim for a lump sum of $28,000. The maximum attorney's fee for a $28,000 settlement is $3,800.[2] The settlement was *1329 court approved on June 18, 1980. After receiving the check, Alker took Mrs. Stogner to his bank, the First National Bank of Covington, Louisiana. The bank was closed,[3] but Alker made arrangements with a bank officer, Curtis M. Carpenter, to be admitted to transact business. Mrs. Stogner endorsed the $28,000 settlement draft and, at Mr. Alker's request, Mr. Carpenter accepted the draft. The bank issued four cashier's checks: $17,000 to Irma Stogner; $9,500 to Irma Stogner; $1,196 to Edward Alker; and $300 to Max Scott, Alker's employee.[4] Since Alker received the use of $1,500,[5] he was entitled to an additional $2,300 in attorney's fees; he claims he accepted only the $1,500.
In fact, Alker retained the $9,500 check made out to Mrs. Stogner. The proof tapes of the bank show that the $9,500 check was involved in a transaction on June 19, 1980.[6] Although the check was not cashed,[7] Alker used the check to transact personal bank business. He made a loan payment of $7,200 and deposited $2,300 in his Golden Brush Farms, Inc. checking account; the two transactions total $9,500.[8]
Since Alker converted the cashier's check for $9,500, he received $11,000 from the $28,000 settlement. This is in excess of the statutory maximum award for attorney's fees in worker's compensation cases.[9] By converting Mrs. Stogner's funds to his own use, Alker was guilty of misconduct[10] and violated four disciplinary rules, as well as LSA-R.S. 23:1141. He collected an excessive fee;[11] attempted to exonerate himself *1330 from liability for personal malpractice;[12] damaged his client during their professional relationship;[13] and failed to deposit the client's funds in an identifiable bank account separate from his own.[14]
Prior to the Committee's hearings, Mrs. Stogner filed suit against Mr. Alker to regain the excess fee.[15] After judgment was rendered against Alker for $6,200, she settled for $4,500. Her attorney received $2,000 and she retained $2,500.

SPECIFICATION NUMBER TWO
Specification number two charges Alker with misconduct in connection with his representation of Mr. Harold Hoffman. Hoffman's personal injury case was settled for $12,000 in December, 1982. Alker retained a forty percent contingency fee plus $1,000. The additional $1,000 is the basis of the misconduct charge.
Mr. Hoffman requested that Alker use the $1,000 to settle a disputed chiropractic bill for $2,123. According to Alker, he put the money in an envelope and locked it in his desk drawer. Alker wrote two letters to the chiropractor, Dr. Michael Breen, dated November 9, 1982,[16] and September 1, 1983. Mr. Alker did not receive a response to the settlement proposals nor did a settlement take place. In December, 1983, Mr. Hoffman wrote to the Louisiana State Bar Association complaining about Alker's representation and failure to return the $1,000. After being contacted by the Committee, Alker sent a $1,000 cashier's check to Mr. Hoffman.
The Commissioner regarded the money as an advance for litigation expenses, which was not required to be placed in an identifiable bank account, but the Committee concluded that Alker should have placed the money in a separate bank account and maintained a complete record.
Retaining part of a client's settlement from one case to settle another is not equivalent to an advance for costs and expenses. Therefore, Alker was required to put the $1,000 in an identifiable bank account and maintain a complete accounting. Alker violated three disciplinary rules.[17]

*1331 SPECIFICATION NUMBERS THREE, FOUR, FIVE and SIX
These four specifications charge Alker with misconduct in connection with his representation of Douglas Ponson. Mr. Ponson hired Alker to represent him in a worker's compensation case which was settled for a lump sum of $40,000. Weekly benefits and medical expenses of $32,504.14 paid prior to the lump sum, brought the value of the settlement to $72,504.14. The maximum attorney's fee allowable on this amount is $8,250.42.[18] Alker had the Citizen's Bank and Trust Company in Covington, Louisiana, prepare money orders from the $40,000 settlement check as follows:

(1) Money Order 61640 to Douglas
 Ponson $24,000
(2) Money Order 61641 to Edward
 C. Alker 4,000
(3) Money Order 61642 to Edward
 C. Alker 500
(4) Money Order 61643 to Edward
 C. Alker 500
(5) Money Order 61644 to Timothy
 Ellender 950
(6) Money Order 61646 to Edward
 C. Alker 8,000

The money orders total $37,950, including four money orders amounting to $13,000 and made payable to Alker. Alker is unable to account for $2,050.
Specification number three charges Alker made an unsatisfactory accounting to Ponson for the $2,050 and charged an excessive fee. It is undisputed that Ponson received $24,000 of the settlement. Alker contends he received only $1,500 as his fee and $950 went to Mr. Ellender, Ponson's former attorney. Alker in fact benefited from the remaining $14,500[19] of the settlement. According to Ponson, Alker said he would invest this balance and make Ponson "a rich young man";[20] Alker never accounted to Ponson for the money and now contends the money was paid to him for past legal representation.[21] This defense was not substantiated during the Committee hearings and the Commissioner's hearing. Alker's actions violated LSA-R.S. 23:1141 and four disciplinary rules.[22]
Specification number four alleges Alker falsely informed attorney Timothy Ellender that $1,500 was the total fee for representing Ponson in the worker's compensation case. Consequently, Ellender agreed to accept $950 as his portion of the fee. A letter from Ellender to Alker substantiated this charge.[23] Following Ponson's complaint to the Committee, Alker changed his story concerning the fee he collected. Alker, whose credibility was called into question throughout the proceedings, took various positions concerning the fee. Overwhelming evidence establishes that Alker misrepresented the fee to Ellender with the intention of retaining for himself at least the statutory maximum fee. Alker violated two disciplinary rules.[24]
Specification number five alleges that Alker caused Ponson to sign three false documents: one confirmed a $1,500 fee was paid to Alker; another acknowledged Ponson received $38,500 of the settlement; and a third, an affidavit, indicated the lump sum settlement was $40,000 and the sum total of the attorney's fees was $1,500. Alker relied on these documents to establish that he received only $1,500. This is in *1332 direct conflict with his admission that Ponson received only $24,000.[25] The documents are not a true reflection of the settlement disbursement. Again, Alker violated two disciplinary rules.[26]
Specification number six accuses Alker of rendering little or no service in exchange for an $8,000 retainer, charging an excessive fee for a worker's compensation case and testifying falsely that the excessive funds constituted a retainer. Alker testified he contracted with Ponson to perform future legal services in exchange for an $8,000 retainer;[27] Ponson denied this.[28] In support, Alker presented two letters written on behalf of Ponson; the letters, however, were drafted prior to the settlement. The sole evidence that Alker performed services in exchange for the retainer was an incomplete set of articles of incorporation. Alker retained the $8,000 as part of a legal fee from the settlement. Whether the $8,000 was a retainer for little or no work or constituted an excessive fee, Alker violated two disciplinary rules.[29]

SPECIFICATION NUMBER SEVEN
There is no controversy relating to specification number seven. The Committee and the Commissioner concur in finding no violation of the Disciplinary Rules.

CONCLUSION
Commissioner Jo Harriet Strickler found Alker guilty of five specifications of misconduct and recommended disbarment. The Committee on Professional Responsibility, with the exception of her conclusion of law in specification number two, agreed with the Commissioner's findings and the recommendation for disbarment.
The bar association has the burden of establishing by clear and convincing evidence that an attorney is guilty of alleged misconduct. Louisiana State Bar Association v. Williams, 479 So.2d 329 (La.1985); Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984). The bar association has met its burden of proof in this disciplinary proceeding. Alker is guilty of six specifications of misconduct.
Disciplinary proceedings are not primarily to punish the attorney but to protect the courts and the public from unprofessional conduct. Louisiana State Bar Association v. Klein, 253 La. 603, 218 So.2d 610 (1969); In re Craven, 204 La. 486, 15 So.2d 861 (1943); Louisiana State Bar Association v. Cryer, 441 So.2d 734 (La.1983); Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whitting ton, 459 So.2d 520 (La.1984); Louisiana State Bar Association v. Vesich, 476 So.2d 811 (La.1985); Louisiana State Bar Association v. Williams, supra. The purpose is to deter future misconduct by a penalty, which will have a salutary effect on other members of the bar. Louisiana State Bar Association v. Jones, 372 So.2d 1186 (La.1979), cert. den. 444 U.S. 1073, 100 S.Ct. 1017, 62 L.Ed.2d 754 (1980); Louisiana State Bar Association v. Summers, 379 So.2d 1065 (La.1980); Louisiana State Bar Association v. Edwards, 387 So.2d 1137 (La.1980); Louisiana State Bar Association v. Kramer, 420 So.2d 1110 (La.1982); Louisiana State Bar Association v. Mundy, 423 So.2d 1126 (La.1982); Louisiana State Bar Association v. Cryer, supra; Louisiana State Bar Association v. Vesich, supra. A proper sanction protects the public from dishonest and/or incompetent attorneys while maintaining confidence in the courts. Louisiana State Bar Association v. Vesich, supra.
Misuse of client funds is a reprehensible act of misconduct. Improper handling and accounting for clients' funds frequently warrants disbarment. See Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975); Louisiana State *1333 Bar Association v. Haylon, 250 La. 651, 198 So.2d 391 (1967). Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986) outlined the typical elements in such a case:
"... [O]ne or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. See Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La., 1985); Louisiana State Bar Association v. Atkins, 440 So.2d 106 (La.1983); Louisiana State Bar Association v. Armagnac, 424 So.2d 996 (La.1982); Louisiana State Bar Association v. Jordan, 375 So.2d 89 (La., 1979); Louisiana State Bar Association v. Philips, 363 So.2d 667 (La., 1978); Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La., 1975)." 486 So.2d 116 at 122.
Alker's violations of the Disciplinary Rules contain each element outlined in Hinrichs. In determining the proper sanction, the court takes into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Dowd, supra; Louisiana State Bar Association v. Whittington, supra. Mr. Alker presented no evidence in mitigation; he did not admit any wrongdoing,[30] nor did he make restitution.[31]
Mr. Alker's actions constitute flagrant violations of the Code of Professional Responsibility. Disbarment is the only appropriate sanction for his acts of misconduct.

DECREE
For the reasons assigned,
IT IS ORDERED, ADJUDGED AND DECREED that the name of Edward C. Alker be stricken from the roll of attorneys and his license to practice law in the state of Louisiana be cancelled.
NOTES
[1] LSA-Const. 1974, Art. V, § 5(B) provides:

"Original jurisdiction. The supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar."
[2] LSA-R.S. 23:1141, which limits attorney's fees in worker's compensation cases, provides in pertinent part:

"B. In no case shall the fees of an attorney who renders service for an employee coming under this Chapter exceed twenty percent of the first ten thousand dollars of any award and ten percent of the part of any award in excess of ten thousand dollars."
[3] The drive-up window was the only part of the bank open on that Wednesday afternoon.
[4] The four cashier's checks plus a $4.00 check issuing fee total $28,000.
[5] This includes the cashier's checks made payable to Alker and his employee, Scott, and the $4.00 fee.
[6] Transactions occurring after business hours are posted the following day.
[7] The vice-president and auditor of the First National Bank, Joseph P. Monroe, Jr., testified:

"Q. From any records, can you say positively, we'll start with positively, can you say positively the $9,500 check wasn't negotiated for cash?
"A. I feel I would be able to beyond a reasonable doubt.
"Q. On what do you base that, sir?
"A. On the sequence of our microfilm and the records that are available to me....
"Q. If it had been negotiated at the teller window for cash there would be an entry on the teller ins and outs?
"A. It would be in the teller ins and outs and it would be in a different group on the microfilm, which it was not." (Committee Hearing, pp. 87-88)
[8] Mrs. Stogner cashed the $17,000 check at another bank that same day. Commissioner Strickler noted:

"... [H]ad Mrs. Stogner been able to cash the $9,500 check at the First National Bank, she could have cashed the $17,000 check there also. She would not have needed to drive to a second bank to convert the second check." (Commissioner's Report, page 8)
[9] LSA-R.S. 23:1141.
[10] DR 1-102(A) states:

"Misconduct.
"(A) A lawyer shall not:
"(1) Violate a Disciplinary Rule.
"(2) Circumvent a Disciplinary Rule through actions of another.
"(3) Engage in illegal conduct involving moral turpitude.
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
[11] DR 2-106(A), (B), "Fees for Legal Services":

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
"(3) The fee customarily charged in the locality for similar legal services.
"(4) The amount involved and the results obtained.
"(5) The time limitations imposed by the client or by the circumstances.
"(6) The nature and length of the professional relationship with client.
"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
"(8) Whether the fee is fixed or contingent."
[12] DR 6-102 states:

"Limiting Liability to Client.
"(A) A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice."
[13] DR 7-101(A)(3) provides in pertinent part:

"Representing a Client Zealously.
"(A) A lawyer shall not intentionally:
* * * * * *
"(3) Prejudice or damage his client during the course of the professional relationship, ..."
[14] DR 9-102 states:

"Preserving Identity of Funds and Property of a Client.
"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
"(B) A lawyer shall:
"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his clients regarding them.
"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
[15] Irma K. Stogner v. Edward C. Alker, No. 64559, Twenty-Second Judicial District Court.
[16] This first letter was written approximately one month before the personal injury case was settled.
[17] DR 1-102, supra; DR 7-101(A), supra; and DR 9-102(A), (B), supra.
[18] LSA-R.S. 23:1141.
[19] This is the remaining balance after delivering Money Orders 61640 and 61644.
[20] Committee Hearing, page 658.
[21] Alker claims Ponson still owes him attorney's fees. In response to a suit for damages filed by Ponson, Alker filed a reconventional demand claiming unpaid attorney's fees in the amount of $20,000.
[22] DR 1-102(A), supra; DR 2-106, supra; DR 7-101(A)(3), supra; and DR 9-102, supra.
[23] The letter dated November 6, 1980, stated:

"Confirming our conversation, I will take $950.00 of your total fee of $1,500.00 on the total settlement of $40,000.00 for Doug Ponson...."
[24] DR 1-102(A), supra; and DR 2-107(A)(2), "Division of Fee Among Lawyers", which states:

"(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
* * * * * *
"(2) The division is made in proportion to the services performed and responsibility assumed by each. * * *"
[25] Committee Hearing, page 839.
[26] DR 1-102(A), supra; and DR 9-102(B)(3), (4), supra.
[27] Committee Hearing, page 833.
[28] Committee Hearing, page 635.
[29] DR 1-102(A), supra; and DR 9-102(B)(3), (4), supra.
[30] Rather than admit his wrongdoing, Alker filed a reconventional demand against Mr. Ponson claiming more money.
[31] The only money Alker returned to a client resulted from a judgment obtained by Mrs. Stogner. He negotiated a settlement rather than pay the full amount of the judgment.