WATSON, Justice.
This is a disciplinary proceeding by the Louisiana State Bar Association against one of its members, T. Kenneth Elbert. The Supreme Court of Louisiana has original jurisdiction.[1] Elbert is charged with three specifications of misconduct in connection with his representation of Pearl Spearman.[2]
FACTS
In June of 1983, Elbert was retained by Pearl Spearman to represent her in connec *399 tion with an automobile accident which occurred on May 21, 1983. Elbert was to receive a one-third contingency fee on any amount recovered. He filed suit against the driver of the other vehicle involved in the accident, Randall Thomas, and his liability insurer, State Farm Insurance Company. Elbert settled the case and received a settlement draft for $6,000 dated September 21, 1984, together with a receipt and release to be executed by Ms. Spearman and an original motion to dismiss the lawsuit. Ms. Spearman signed the receipt and release, endorsed the settlement draft, and returned the documents to Elbert, who told her he had to collect on the draft and would return with her money in about a week. Ms. Spearman never saw Elbert after that despite attempts to contact him by telephone.
In late February of 1985, Ms. Spearman retained another attorney, Mary Heck, to assist her in collecting her portion of the settlement proceeds, as she was being pressed for payment of medical bills resulting from injuries caused by the accident. Attorney Heck reported the matter to the Louisiana State Bar Association.
The Bar Assocation, through the Committee on Professional Responsibility, attempted to contact Elbert by a letter dated March 22, 1985, giving fifteen days for response. When there was no response, the Committee sent a follow-up letter dated April 9, 1985.
Elbert then purchased a cashier’s check in the amount of $6,000 made payable to Pearl Spearman and Kenneth Elbert. Respondent mailed the unendorsed cashier’s check to Ms. Spearman with a letter dated April 19, 1985, and mailed a copy of the letter to the Committee.
On April 22, 1985, the Committee requested that Elbert furnish bank records which would show where the $6,000 had been held between the time it was received from the insurance company and the time Elbert sent the $6,000 cashier’s check to Ms. Spearman.
Meanwhile, Ms. Spearman and Ms. Heck made unsuccessful efforts to obtain Elbert’s endorsement on the cashier’s check. Ms. Heck requested a status conference which Elbert did not attend. Ms. Heck discovered Elbert was counsel for the East Baton Rouge Parish Bingo Committee and attended the next scheduled meeting. Elbert refused to endorse the cashier’s check at the meeting but did endorse the check at Ms. Heck’s office on May 23, 1985, when Ms. Spearman finally received her settlement funds.
Elbert furnished Ms. Spearman with a disbursement sheet which showed $1,332 as Elbert’s attorney’s fee, a disbursement to Ms. Spearman’s chiropractor, Dr. Black, in the amount of $2,004, and a net to Ms. Spearman of $2,814. Ms. Spearman signed another receipt and release which was transmitted to the attorney for State Farm, and the suit was dismissed.
Since the Committee had not received a response from Elbert to its April letter, a follow-up letter was sent on June 3, 1985. Again no response was received, and Elbert was subpoenaed to appear before counsel for the Committee on Professional Responsibility. At that appearance on July 23, 1985, Elbert refused to identify the bank account in which he had allegedly kept Ms. Spearman’s funds for approximately eight months.
On November 26, 1985, the Committee held a formal investigative hearing on three specifications of misconduct against Elbert; neither Elbert nor anyone representing him attended.
Specification number one alleged that Elbert neglected submitting the release to the insurance company and having the lawsuit dismissed. Although Elbert negotiated the settlement draft, he failed to make an accounting and refused to distribute any funds to his client until May 23,1985. This conduct was prejudicial to the administration of justice and adversely reflected on his fitness to practice law. Elbert’s behavior violated Disciplinary Rules 1-102(A)(5) and (6)[3] and Disciplinary Rules 9- *400 102(B)(4)[4] of the Code of Professional Responsibility.
Specification number two alleged that Elbert converted the settlement draft into a cashier’s check and did not deposit the funds into an identifiable bank account, but instead commingled and converted the funds to his own use. Elbert failed to render an accounting of the funds to his client and failed to maintain complete records, all in violation of Disciplinary Rules 1-102(A)(4), (5) and (6)[5] and Disciplinary Rules 9-102(A) and (B)(3).[6]
Specification number three alleged that Elbert, by failing to cooperate with the Committee on Professional Responsibility, engaged in conduct prejudicial to the administration of justice and conduct that adversely reflected on his fitness to practice law, in violation of Disciplinary Rules 1-102(A)(5) and (6).[7]
Based on the evidence presented at the hearing, the Committee unanimously decided to file a petition for disciplinary action. Elbert could not be located by the sheriff for service of the petition, and a curator ad hoc was appointed to represent him. A private process server was appointed to effect service of the petition on Elbert. Domiciliary service was finally made on June 6, 1986, and the curator was discharged. No answer was filed to the petition.
Commissioner W. Leonard Werner was appointed to take evidence and report his findings of fact and conclusions of law. A hearing was scheduled for October 31, 1986, and Elbert was subpoenaed to appear. Elbert appeared but requested a continuance on the ground that he did not receive notice until October 29 of the subpoena served on him by domiciliary service at his wife’s house on October 15,1986, and he needed additional time to prepare a defense. Elbert was physically, though not legally, separated from his wife at this time. The Commissioner granted the request for a continuance and reassigned the hearing of the case for November 26, 1986. Elbert appeared at this hearing representing himself.
Elbert testified that Ms. Spearman was his wife's friend and that their relationship was therefore closer than that of attorney-client. On two prior occasions, his bank had seized trust account funds pursuant to a writ of fieri facias issued for collection of a $36,000 money judgment. Elbert sought to protect Ms. Spearman’s funds from seizure. He therefore took the settlement *401 draft to a bank where an officer would allow him immediate credit. This officer converted the $6,000 settlement draft into a $4,000 cashier’s check and $2,000 cash. Elbert later returned to the bank only to find that the officer who had made the transaction was no longer employed there. Explaining that there had been an error, he was allowed to cash the $4,000 cashier’s check. Elbert asserts he then took the $6,000 in cash and deposited the money into an unidentified bank account. Elbert refused to divulge information regarding this account and offered no documentation concerning the preservation of these funds. When questioned about this unidentified account, Elbert claimed his Fifth Amendment privilege against self-incrimination. After Elbert became aware of the charges filed against him, he had the funds withdrawn and converted into a cashier’s check for $6,000 made payable to Ms. Spearman and himself.
Elbert testified he was unable to make an accounting in September of 1984 because no final figure was available as to what the settlement would eventually be if other claims were pursued. Ms. Spearman allegedly had a claim on a hospitalization policy and was due medical payments coverage under her automobile insurance policy. After obtaining her signature on the settlement draft, he claimed he informed her of these other claims and requested her policy numbers. Elbert said Ms. Spearman wanted him to keep the funds until these other claims were exhausted. Ms. Spear-man said she never made such a request.
Elbert testified that he was hard to locate because of illness in his family. He was also involved in an IRS investigation in January of 1985. Attempts to contact him were complicated by the fact that only one of the two addresses the Bar Association had was correct.
Elbert maintained that at no time were the funds converted to his own use and that he was not experiencing financial difficulties, despite the bank judgment against him for $36,000. He felt he made his best effort to maximize Ms. Spearman’s claims and maintained she had wanted him to hold all funds until the total was received, despite her assertions to the contrary.
Regarding Specification number one, the Commissioner decided that although Elbert may have been Ms. Spearman’s friend prior to this matter, in filing a lawsuit where he designated himself as her attorney, in negotiating a settlement and in charging her a one-third contingency fee, Elbert acted like an attorney and should be judged accordingly. The Commissioner believed the testimony of Ms. Spearman that she did not request Elbert to pursue further claims nor did she ask him to keep her share of the settlement, as she needed the funds to pay her doctor bills. Even if Elbert had been retained to pursue other claims, this would not have prevented him from disbursing the money received from the State Farm settlement, and did not justify his keeping the settlement for eight months.
Although the sickness in Elbert’s family and the IRS investigation were mitigating factors, the Commissioner decided that neither justified an attorney retaining a client’s funds or refusing to give opposing counsel the receipt and release signed by the client. The Commissioner found Elbert guilty of the conduct described in Specification number one and in violation of Disciplinary Rule 1-102(A)(5) and (6) and Rule 9-102(B)(4).
Elbert acknowledged control of his client’s settlement funds for eight months when the funds were not kept in a trust account. Elbert refused to identify any other account and asserted his Fifth Amendment privilege against self-incrimination on this question. Elbert’s memorandum confirmed that “I have technically violated DR 9-102 in that I did not in fact have the $6,000.00 in an identifiable bank account.”[8] The Commissionér found Elbert guilty of the conduct described in Specification number two, violations of Disciplinary Rule 1-102(A)(4)(5) and (6) and Rule 9-102(A) and (B)(3).
The Committee cited Elbert’s own memorandum in finding him guilty of specifica *402 tion number three, a violation of Disciplinary Rule 1-102(A)(5) and (6):
“My only explanation for my failure to fully cooperate with the COPR results from the fact that there is a human element involved and very few humans step forward to take their medicine when it is to be dispensed to them and I did not step forward in this case.”[9]
Finding Elbert guilty of all three specifications of misconduct and considering Elbert’s prior public reprimand, the Commissioner found the appropriate penalty to be suspension from the practice of law for a period of nine months. The Louisiana State Bar Association’s Committee on Professional Responsibility concurred in the Commissioner’s findings of fact and conclusions of law but opposed this recommended penalty suggesting instead a two and a half year suspension from the practice of law.
CONCLUSION
The purpose of disciplinary proceedings is to maintain high standards of professional conduct. These standards protect the public and the administration of justice from lawyers who have demonstrated an inability or unwillingness to properly discharge their professional duties. Louisiana State Bar Association v. Thalheim, 504 So.2d 822 (La.,1987); Louisiana State Bar Association v. McGovern, 481 So.2d 574 (La.,1986); Louisiana State Bar Association v. Powell, 439 So.2d 415 (La.,1983).
The Bar Association has the burden of establishing by clear and convincing evidence that a lawyer is guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.,1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.,1984). Since each case is unique, the discipline imposed depends upon the seriousness of the alleged offense and the circumstances surrounding it. Both aggravating and mitigating circumstances are to be considered in imposing sanctions.
From the evidence, it is clear that Elbert cashed Ms. Spearman’s settlement draft and did not disburse her money. He admitted that he did not have the money in an identifiable bank account. His claim that he kept the money in safekeeping is unacceptable. “[W]hen an attorney relies upon a ‘black box’ defense, viz., that he kept client funds secretly but securely in a private safe or similar unregulated depository, the likelihood of actual embezzlement is so great, and the policy of professional responsibility in protecting the client from such risks so strong, that it should be presumed that the attorney is guilty of embezzlement unless he successfully carries both the burden of going forward with the evidence and the burden of persuasion otherwise.” Louisiana State Bar Association v. Krasnoff, 488 So.2d 1002 at 1005 (La.,1986).
Elbert also failed to maintain contact with his client which forced her to retain other counsel to collect her portion of the settlement proceeds. Elbert disbursed the funds eight months later only after being apprised of the complaint against him and after being contacted by Ms. Spearman’s new counsel.
The Commissioner believed Ms. Spear-man’s testimony that she never requested Elbert to pursue other claims. She needed the money to pay her medical bills. Elbert’s claim that she requested him to keep her portion of the settlement proceeds is incredible.
In sum, respondent has violated the provisions of Disciplinary Rule 1-102(A)(4)(5) and (6) and Rule 9-102(A), (B)(3) and (4) of the Code of Professional Responsibility for the Louisiana State Bar Association. Elbert’s difficulties with the Internal Revenue Service and the illness in his family are mitigating circumstances.
Misuse of a client’s funds is one of the gravest forms of professional misconduct and frequently warrants disbarment. Louisiana State Bar Association v. Alker, 491 So.2d 1328 (La.,1986); Louisiana State Bar Association v. Zeringer, 447 So.2d 466 *403 (La.,1984); Louisiana State Bar Association v. Philips, 363 So.2d 667 (La.,1978); Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.,1975); Louisiana State Bar Association v. Selenburg, 270 So.2d 848 (La.,1972), cert. den. 414 U.S. 1021, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973); and Louisiana State Bar Association v. Haylon, 250 La. 651, 198 So.2d 391 (La.,1967).
In Louisiana State Bar Association v. Hopkins, 447 So.2d 464 (La.,1984), the attorney failed to maintain an accurate accounting of a client’s settlement funds, failed to promptly pay or deliver the client’s portion of the settlement funds, and commingled and converted the client’s funds to his own use. The client received full repayment of all funds four months after settlement and nine days after the attorney was notified of the complaint. Hopkins fully cooperated with the Committee during its investigation of the matter. These circumstances, coupled with the fact that this was the first disciplinary action taken against Hopkins, resulted in him receiving a one year suspension from the practice of law.
In Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.,1984), the attorney failed to account to his client or notify the client about funds collected on the client’s behalf. The attorney also converted the client’s funds and commingled them with his own. Since full restitution was made and there were no prior disciplinary actions, Whittington received a two year suspension from the practice of law.
Considering the guidelines in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.,1986), the appropriate sanction for Elbert’s misconduct would be a suspension of one to three years. It is impossible to determine whether Elbert benefited from his infractions since he refused to divulge where or how the money was kept for eight months. Ms. Spearman was required to contact and presumably pay another attorney to recover her settlement proceeds. She had to deal with a creditor pressing for payment of medical bills and ran the risk of possible legal action from that creditor. Although Ms. Spearman finally received her share of the settlement proceeds, she suffered delay, inconvenience and expense. A complaint was lodged with the Committee on Professional Responsibility, and Elbert failed to fully cooperate with the Committee. He failed to respond, to keep the Bar Association informed as to his whereabouts, and furnish documentation about what he did with the funds. Considering the circumstances of this case as well as the mitigating factors, an appropriate sanction is a one year suspension from the practice of law.
DECREE
IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that T. Kenneth Elbert be suspended from the practice of law for a period of one year from the date of finality of this judgment.
DENNIS, J., concurs in part, dissents in part, and assigns reasons.
LEMMON, J., dissents in part and assigns reasons.

. LSA-Const. 1974, Art. 5, § 5(B) Original Jurisdiction.

. When the matter was set for oral argument before the Louisiana Supreme Court, counsel for Elbert represented that he had been retained only days before argument and had not had the chance to review the record in the matter. Counsel petitioned to be allowed to file supplementary material in the record before a final decision was made. Out of an abundance of caution, this court allowed counsel sixty days to further supplement the record. By later motion, counsel withdrew the request to supplement the record, finding the record complete.

. Rule 1-102(A)(5) and (6) of the Code of Professional Responsibility provides:
"(A) A lawyer shall not:
[[Image here]]
*400 "(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law.”

. Rule 9-102(B)(4) of the Code of Professional Responsibility provides:
"(B) A lawyer shall:
* * * * * *
“(4) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.”

. Rule 1-102(A)(4), (5) and (6) of the Code of Professional Responsibility provides:
"(A) A lawyer shall not:
******
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
“(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law.”

. Rule 9-102(A) and (B)(3) of the Code of Professional Responsibility provides:
"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
"(B) A lawyer shall:
******
"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them. * * * "

. See Footnote 3 infra.

. Opinion of the Commissioner, page 10.

. Opinion of the Commissioner, page 11.