*495 ATTORNEY DISCIPLINARY PROCEEDINGS
[,PER CURIAM.
This disciplinary matter arises from three counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, T. Kenneth Elbert, an attorney licensed to practice law in the State of Louisiana, but currently suspended from practice.[1]
UNDERLYING FACTS
Count I — The Elmore Matter
Respondent represented Dennis Ray El-more in four separate personal injury cases over a period of approximately five years. All of the cases were apparently settled or brought to judgment. During his representation of Mr. Elmore, respondent did not maintain a client trust account and did not segregate Mr. Elmore’s funds from his own. Respondent did not provide an accounting to Mr. Elmore of any amounts due him or paid to others on his behalf. In 1996, Mr. Elmore retained new counsel, Cathryn Cloninger-Kojis, who attempted without success to obtain Mr. El-more’s files from respondent.
pin April 1997, Ms. Cloninger-Kojis filed a complaint against respondent with the ODC. On April 15, 1997, the ODC forwarded a copy of the complaint to respondent at his primary registration statement address. Respondent failed to reply to the complaint, necessitating the issuance of a subpoena to compel his response.
Counts II and III — The Unauthorized Practice of Law Matters
On September 5, 1997, this court suspended respondent from the practice of law for one year, with six months deferred, followed by two years of probation subject to conditions. In re: Elbert, 97-1303 (La.9/5/97), 698 So.2d 949. Respondent was not reinstated to practice until August 12, 1998, when he complied with the requirements of Supreme Court Rule XIX, § 23.
Between May 27, 1998 and August 4, 1998, respondent filed pleadings on behalf of the plaintiff in Wheeler v. Wheeler, No. 90,939 on the docket of the Family Court for the Parish of East Baton Rouge.
In an unrelated matter, by letter to the Louisiana Department of Justice dated June 26, 1998, respondent represented that he had been retained to handle an ongoing matter on behalf of Gretchen Durham. In July 1998, Assistant Attorney General Thomas L. Enright, Jr. filed a complaint against respondent with the ODC. On July 31, 1998, the ODC forwarded a copy of the complaint to respondent at his primary registration statement address. Respondent failed to reply to the complaint.
DISCIPLINARY PROCEEDINGS
On June 7, 2000, the ODC filed three counts of formal charges against respondent, alleging that his conduct violated the *496 following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons), 1.16(d) (termination of the representation), 5.5(a) (engaging in the 1 ¡¡unauthorized practice of law), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (failure to cooperate with the ODC in its investigation). In his answer to the formal charges, respondent denied any misconduct with respect to the Elmore matter, and he requested a hearing in mitigation with respect to the two unauthorized practice of law matters.
At the formal hearing conducted by the hearing committee, the ODC introduced documentary evidence in support of the formal charges, including the complaints in each of the matters at issue; the sworn statements of respondent and Mr. Elmore, the client subject of Count I of the formal charges, and various correspondence concerning the Elmore matter; copies of the pleadings filed by respondent in the Wheeler case, subject of Count II of the formal charges; and copies of the letter written by respondent to Mr. Enright, subject of Count III of the formal charges. The ODC also called Mr. Elmore and his present attorney, Ms. Cloninger-Kojis, to testify in person before the committee. Though respondent was properly notified of the hearing, he did not appear, nor was any evidence presented on his behalf.

Review of the Record

Count I — The Elmore Matter
Mr. Elmore, a maintenance worker with a high school education, was employed in the office building where respondent maintained his law practice. Between December 1990 and June 1993, Mr. Elmore was involved in four separate automobile accidents. He asked respondent to handle the cases, and though no formal retainer agreement was executed, respondent agreed that he would “take care of everything.” Unfortunately, it may never be known with certainty how much was recovered on behalf of Mr. Elmore in these cases, because during the representation, Mr. Elmore |4never saw any pleadings or documentation concerning his cases, never saw a file or any correspondence, and never discussed the cases with respondent in any detail whatsoever. In April 1996, respondent gave Mr. Elmore $2,000 in cash and a cashier’s check in the amount of $5,600, which respondent contended represented a complete accounting of all proceeds due Mr. Elmore from the four cases.
Although respondent did not testify at the formal hearing, he did give a sworn statement to the ODC in June 1997, pursuant to subpoena. Respondent conceded that he did not maintain a client trust account or otherwise keep funds belonging to Mr. Elmore segregated from his own. Respondent flatly stated that he was entitled to retain all of the funds he recovered on Mr. Elmore’s behalf as a result of a June 1, 1992 power of attorney which he claimed was granted him by Mr. Elmore.[2] *497 Respondent asserted that this power of attorney entitled him to do whatever he pleased with the money recovered on Mr. Elmore’s behalf. Respondent also produced a document entitled “Recapitulation, Acknowledgment, Receipt and Release,” dated April 25, 1996, which he claimed was signed by Mr. Elmore and which showed how all of Mr. Elmore’s funds were disbursed.[3] According to the “recapitulation,” respondent collected sums totaling $33,243 in the four cases he handled on behalf of |KMr. Elmore. Respondent retained $11,080 in attorney’s fees (33%% of the total)[4] and paid $517.50 in court costs and $6,000 in medical expenses, leaving $15,645.50 due to Mr. Elmore. From this amount, respondent deducted $2,200 pursuant to an “assignment,” $1,800 for “air conditioning,” and $3,807 for cash payments to Mr. Elmore on respondent’s “ledger.” These deductions left $7,838.50 due to Mr. Elmore, of which Mr. Elmore received $7,600 ($2,000 in cash and a $5,600 cashier’s check). No explanation was provided on the “recapitulation” for the difference of $238.50 that was not accounted for.[5]
Mr. Elmore testified that he trusted respondent completely and would endorse cheeks as they were received, but that he was given no money or accounting at that time. Mr. Elmore admitted that he borrowed small sums of money from respondent over the years, which by his own accounting totaled $5,013. After receiving $7,600 from respondent in April 1996, Mr. Elmore sought the advice of Ms. Cloning-er-Kojis, who attempted without success to retrieve Mr. Elmore’s files from respondent. Without these files it has been impossible to reconstruct the settlement history of Mr. Elmore’s cases. Ms. Clo-ninger-Kojis has been able to verify that payments totaling $18,128 were made by State Farm Insurance Company in two of the four Elmore cases. There is no record of any other payments. In addition, Ms. Cloninger-Kojis has been unable to trace the medical payments made on behalf of Mr. Elmore,[6] and |fithere are serious discrepancies concerning the alleged assignment of $2,200, the payment of $1,800 for “air conditioning,” and the $3,807 in alleged cash payments to Mr. Elmore on respondent’s “ledger.” To date, respondent has refused to turn over Mr. Elmore’s files to Ms. Cloninger-Kojis, even as she continues to try to sort out Mr. Elmore’s affairs, and the insurance company records have long since been destroyed. Under the circumstances, Mr. Elmore will likely never know exactly how much was recovered on his behalf from the defendants in his cases.

*498
The Unauthorized Practice of Law Matters

Respondent served the active portion of his 1997 suspension and was eligible to be reinstated to the practice of law on March 19, 1998. However, he did not comply with the reinstatement requirements until August 12, 1998, and accordingly, he remained suspended until that date.
On May 27, 1998, respondent filed a “Rule to Increase Child Support, for Payment of Back Due Costs and Interest Due Defendant’s Attorney from Previous Judgments Rendered by this Court and for Defendants Unpaid Portion of Children’s Medical and Dental Expenses and Child Care” on behalf of Ms. Aarolyn Wheeler in her suit against her former husband. On July 28, 1998, respondent requested that two subpoenas be issued in the Wheeler case. Finally, on August 4, 1998, respondent filed an “Affirmative Answer to Petition for Joint Custody and to Fix Visitation” on behalf of Ms. Wheeler.
In an unrelated matter, respondent wrote a letter to Assistant Attorney General Thomas L. Enright, Jr. on June 26, 1998, regarding Ms. Gretchen Durham. In the letter, respondent represented that his “office is retained by Ms. Durham in this matter” and attempted to resolve a collection problem between the State of Louisiana and Ms. Durham.
| ^Hearing Committee Recommendation
On November 29, 2000, the hearing committee filed its recommendation with the disciplinary board. In connection with the Elmore matter, the committee made the following findings of fact:
1. Mr. Elmore retained respondent as his attorney to represént him on at least four different occasions.
2. Respondent proceeded to secure either a settlement or a judgment on four cases.
3. Respondent did not maintain a trust account on behalf of Mr. Elmore nor did he segregate Mr. Elmore’s funds from his own.
4. Respondent failed to properly account to Mr. Elmore for money due him as a result of these settlements or recoveries.
5. Respondent engaged in fraud and ill practices with regard to Mr. El-more’s funds and converted those funds to his own use.
6. Respondent recovered on Mr. El-more’s behalf at least $18,128 (the amount which has been documented by the insurer involved in two of Mr. Elmore’s cases); however, by his own admission, respondent recovered on Mr. Elmore’s behalf the sum of $33,243.
7. Mr. Elmore received $7,600 from respondent in April 1996.
8. The only documented medical expense is one trip to Baton Rouge General Hospital. Discrepancies exist concerning the other medical expenses, the assignment of $2,200, an $1,800 loan for an air conditioning unit, attorney’s fees, other costs, and expenses. These fees, costs, and expenses are unsubstantiated, other than in respondent’s recapitulation, which Mr. Elmore testified he never received.
9. By Mr. Elmore’s own accounting, represented by a personal ledger kept by him over the years, he was advanced the sum of $5,013 by respondent.
IrIO. Respondent owes Mr. Elmore the sum of approximately $22,163 (less attorney’s fees, medical expenses, and court costs).
Based on these factual findings, the committee concluded that respondent violated *499 Rule 1.15 of the Rules of Professional Conduct by holding property belonging to Mr. Elmore in his own account and not placing the funds in a segregated trust account, and by failing to render a full accounting to Mr. Elmore; violated Rule 1.16(d) by failing to turn over his files or other documentation regarding Mr. El-more’s settlements and other legal matters; and violated Rule 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
With respect to the unauthorized practice of law matters, the committee found that respondent violated Rule 5.5(a) of the Rules of Professional Conduct by representing Ms. Wheeler and Ms. Durham while he was suspended from practice. Finally, the committee concluded that respondent failed to cooperate with the ODC in its disciplinary investigation, and that he appeared to give a sworn statement only when subpoenaed to do so, in violation of Rules 8.1(c) and 8.4(g).
The committee determined that the baseline sanction for these serious offenses is disbarment. In aggravation, the committee noted respondent’s prior disciplinary offenses,[7] bad faith obstruction of the disciplinary process, and indifference to making restitution. The committee found there are no mitigating circumstances present. Concluding there is no reason under the facts of this case to deviate from the baseline sanction, the committee recommended that respondent be disbarred from the practice of law.
| gNeither respondent nor the ODC objected to the hearing committee’s recommendation.

Disciplinary Board Recommendation

After reviewing the record of this matter, the board generally concurred in the factual findings made by the hearing committee, with the exception of the committee’s finding of the approximate amount of restitution due Mr. Elmore. While the board agreed that restitution is due to Mr. Elmore, it found that there is not sufficient information in the record regarding the amount of attorney’s fees, expenses, and costs, if any, owed by Mr. Elmore. The board agreed that respondent violated the Rules of Professional Conduct as charged. The board found respondent knowingly violated duties owed to his client, the legal system, and the profession, and that respondent’s misconduct resulted in actual injury to his client, the legal system, and the profession. The board adopted the aggravating factors recognized by the hearing committee, and agreed that there are no mitigating factors present.
In light of these findings and the fact that respondent’s prior discipline has not been effective in deterring him from a continued pattern of misconduct, the board recommended that he be disbarred from the practice of law. The board also recommended that respondent be ordered to provide a complete accounting to Mr. Elmore and pay any restitution due. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
*500 Although neither respondent nor the ODC objected to the disciplinary board’s recommendation, this court, on its own motion, ordered briefing pursuant to Supreme Court Rule XIX, § 11(G)(1)(a). The court’s September 18, 2002 order directed the |inparties “to address whether the sanction of permanent disbarment pursuant to Supreme Court Rule XIX, Sections 10(a) and 24, as amended August 1, 2001, is appropriate under the facts of this case.”
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our independent review, we conclude the findings of the hearing committee, as modified by the disciplinary board, are supported by the record. It cannot be disputed that respondent has violated numerous provisions of the Rules of Professional Conduct. There are no mitigating factors present; however, numerous aggravating factors exist.[8] Under these circumstances, we conclude the baseline sanction is disbarment. However, given the egregiousness of respondent’s misconduct, we will further consider whether permanent disbarment is warranted. .
InOn August 1, 2001, after a lengthy period of study and public comment, this court adopted amendments to Supreme Court Rule XIX, § 10[9] and § 24[10] to provide for the sanction of permanent disbarment. In re: Gros, 98-0772 (La.3/15/02), 815 So.2d 799; In re: Parker, 00-3532 (La.3/15/02), 815 So.2d 794; In re: Patrick, 01-1419 (La.3/15/02), 815 So.2d 804. *501 In our commentary accompanying the amendment, we stated, in pertinent part:
In the public interest, the Court has amended Louisiana Supreme Court Rule XIX to codify Permanent Disbarment as an available sanction for attorney misconduct. While the Court has always had the discretion to deny an application for readmission after the requisite five (5)-year waiting period after disbarment, an attorney who is permanently disbarred under these circumstances will be prohibited from applying for readmission to the bar. These amendments reflect the judgment of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case and in consideration of the guidelines in Appendix E to the Rules of Lawyer Disciplinary Enforcement.
In Appendix E, we set forth several guidelines illustrating the type of cases which might warrant permanent disbarment. We explained that these guidelines were |12not intended to bind this court in its decisionmaking, but to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.” Under Guidelines 1 and 8, respectively, “repeated or multiple instances of intentional conversion of client funds with substantial harm” and “following notice, engaging in the unauthorized practice of law ... during the period of time in which the lawyer is suspended from the practice of law or disbarred” are grounds for permanent disbarment. Clearly, respondent’s conduct in the matters at issue falls squarely within these guidelines.
As recently noted in In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934, we do not lightly impose the sanction of permanent disbarment. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent’s conduct is unquestionably serious in nature. He engaged in the unauthorized practice of law after being suspended by this court, and in fact, did so on more than one occasion and in more than one client matter. Furthermore, respondent abused the trust of his client, Mr. Elmore, and relied upon a so-called power of attorney as giving him carte blanche to use a client’s funds at his own pleasure and without any accounting to the client whatsoever. By such conduct, respondent has utterly failed in his ethical obligation to preserve and maintain his client’s funds. ■ This court cannot and will not tolerate such conduct by an attorney, upon whom high standards of honesty and righteousness are erected. See Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). Because respondent does not possess the requisite moral fitness to practice law in this state, he must be permanently disbarred.
| ^DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of T. Kenneth Elbert be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to furnish a complete accounting to Dennis Ray Elmore and to make appropriate restitution. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence *502 thirty days from the date of finality of this court’s judgment until paid.

. In 1997, we suspended respondent from practice for one year, with six months deferred, followed by two years of probation subject to conditions. In re: Elbert, 97-1303 (La.9/5/97), 698 So.2d 949. Respondent served the active portion of his suspension and was reinstated to the practice of law on August 12, 1998. Effective July 6, 2001, respondent’s probation was revoked for failure to comply with the conditions of probation, and the deferred portion of the prior suspension was made executory. In re: Elbert, 01-1608 (La.6/22/01), 790 So.2d 624. Although respondent is eligible for reinstatement from this suspension, he has not complied with the requirements of Supreme Court Rule XIX, § 23. Accordingly, he remains suspended from the practice of law.

. Although Mr. Elmore’s signature appears on the power of attorney, he denied that the contents of the document were ever explained to him. The power of attorney grants to respondent (“in his personal capacity and not as an attorney at law”) authority to
Sign any and all document, check, release, pleading [sic] or any other document on my behalf. To maintain all monies as he sees fit, until such time that I have accumulated funds sufficient for me to purchase the house located at 6735 Vineyard, Baton Rouge, Louisiana. All proceeds are hereby assigned to T. Kenneth Elbert until he has had an opportunity to recover all sums advanced to me. This document also acknowledges a debt due T. Kenneth Elbert of $1,000.00 in loans in 1991 and $1,200.00 in 1992. *497 Mr. Elmore denies that he asked respondent to keep his money until he could accumulate enough to purchase a house.

. Although Mr. Elmore's signature appears on the "recapitulation,” he denied ever having seen the document.

. Interestingly, Mr. Elmore testified that he did not sign a contingency fee agreement with respondent, and that respondent never explained how the legal fees would be paid in the cases, or indeed, even what the legal fees would be.

. In the sworn statement respondent provided to the ODC, he explained that the difference of $238.50 was not important because he was certain he had advanced more than $3,807 to Mr. Elmore on his "ledger.”

.None of the medical expenses which respondent claims to have paid (totaling $6,000) can be verified by the alleged medical providers. Mr. Elmore testified that he sought medical treatment on only one occasion, when he visited the emergency room of Baton Rouge General Hospital following his second automobile accident, but his treatment records reveal that a worker’s compensation carrier was billed for those expenses.

. In addition to the 1997 suspension and revocation of probation matters earlier discussed, respondent was also suspended from the practice of law for one year in 1987, Louisiana State Bar Ass’n v. Elbert, 512 So.2d 398 (La.1987), and has twice been reprimanded (1985 and 1988) for misconduct substantially similar to that at issue here. Presently, respondent is ineligible to practice law for failure to pay bar dues and the disciplinary assessment (since September 1, 2000) and for failure to comply with the mandatory continuing legal education requirements (since July 26, 2001).

. In addition to those noted by the hearing committee, we find the following aggravating factors are present: dishonest or selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law (admitted 1977).

. Supreme Court Rule XIX, § 10(A) was amended to add the highlighted language:
(1) Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Supreme Court Rule XIX, § 24(A) was amended to add the highlighted language:
A disbarred lawyer or a suspended lawyer who has served a suspension period of more than ■ one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court.... No lawyer may petition for readmission until five years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of five years from the time of the effective date of the interim suspension. The court retains the discretion, in accordance with Section 10A of this rule, to permanently disbar a lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.