372 So.2d 1186 (1979)
LOUISIANA STATE BAR ASSOCIATION
v.
Johnnie A. JONES.
No. 61799.
Supreme Court of Louisiana.
June 25, 1979.
Rehearing Denied July 27, 1979.[*]
Leonard Fuhrer, Alexandria, Chairman, Roland J. Achee, Shreveport, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, Alfred S. Landry, New Iberia, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, Counsel, Louisiana State Bar Ass'n, Committee on Professional Responsibility for petitioner.
Johnnie A. Jones, Baton Rouge, for respondent.

DISCIPLINARY PROCEEDING
SUMMERS, Chief Justice.
The Louisiana State Bar Association, appearing through the Committee on Professional Responsibility, brings this action against respondent Johnnie A. Jones, a practicing attorney, seeking his suspension from the practice of law for professional misconduct.
Hearings were conducted on May 23, 1977 and on October 4, 1977 by the Committee. Respondent appeared in his own behalf. Based upon its investigation and the evidence obtained the Committee on Professional Responsibility concluded that respondent had been guilty of professional misconduct "as to evidence a lack of fitness for the practice of law."
On March 14, 1978 the Louisiana State Bar Association instituted disciplinary proceedings. This Court appointed a Commissioner to take evidence and to report his findings of fact and conclusions of law. The Commissioner conducted a hearing on August 1, 1978 at which respondent appeared and again represented himself.
As a result of the hearing the Commissioner found that on August 25, 1969 respondent was engaged by William Adams to represent him in the prosecution of a workmen's compensation claim. After trial and appeal judgment was rendered in Adams' favor for $19,492.22. The judgment was paid by the insurer, St. Paul Fire & Marine Insurance Company, in two drafts: the first dated February 13, 1973 for $10,198.70 and the second dated November 7, 1973 for $9,293.52.
According to a receipt dated February 16, 1973, signed by Adams, respondent deducted $4,455.44 from the first draft as reimbursement for cash advances made by him pending the litigation. Another $2,500 was *1187 shown on the receipt as a deduction for attorney's fees, and $3,253.26 was shown as having been remitted to Adams. Contrary to this receipt, the record shows that respondent issued his check for $1,000, dated February 16, 1973, to Adams and retained $2,253.26 in his "business account" at the bank. As of November 1973, $917.86 of the money due to Adams from the February 13, 1973 draft had not been delivered to him. Of this amount, $400 was remitted to Adams on November 27, 1973 and the remaining $517.86 was remitted on January 10, 1974.
During this time the balance in respondent's account at the bank was $658.94 on February 28, 1973, $4.65 on March 8, 1973 and the account was overdrawn by $5.69 on April 5, 1973. In this same period respondent had a separate trust account in another local bank with a constant balance of $240.36. Obviously respondent had either commingled or used Adams' money.
When the second draft for $9,293.52 was received on November 7, 1973, respondent deposited $4,000 in this trust account. That account was debited for $1,097.55 on December 12, 1973, leaving a balance of $3,130.95 and the account remained under $4,000 until January 11, 1974. On January 10, 1974 Adams received a check for $4,517.86 drawn on respondent's trust account. The amount represented a final accounting of the proceeds from both drafts. The Commissioner found a strong inference from these facts that a portion of the proceeds of the second draft were commingled.
In June 1970 the Bar Association was contacted by an attorney acting for four individuals who had retained respondent to assert their claims for personal injuries sustained in a September 5, 1963 automobile accident. It was reported that the claims had been settled in March 1968 for $3,570 and claimants had not been paid. It was not until August 1970, after involvement of the Committee of the Bar Association that claimants received their money.
The Commissioner concluded that there were instances of misconduct relating to improper handling of respondent's client's funds. Moreover, the Commissioner found that "(o)verriding the cited instances of commingling is the respondent's admission that he has as a matter of practice commingled clients' funds in the past that he will continue to do so because it is the only way he can stay in business."
Canon 9 of the Code of Professional Responsibility charges an attorney with the responsibility of maintaining his client's funds separate from his own in an identifiable bank account and to promptly pay or deliver to the client as requested by the client all the funds the client is entitled to receive. Under Disciplinary Rule 9-102 the following guidelines for handling the funds of clients are provided:
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of *1188 the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
At the October 4, 1977 hearing respondent testified: "In the words, the way you are using `commingling' my answer to that is yes, because I've done all that kind of commingling; ..." "I don't see how I can function without having some type of commingling ...." In brief addressed to this Court respondent submits that "if these factual situations as presented constitute intentional noncompliance with the canons by respondent, then in such event respondent has violated the canons."
It is the duty of an attorney to uphold the integrity of the bar and to avoid even the appearance of impropriety. Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975). It is well-settled that since the primary objective of disciplinary proceedings is to protect the courts and the public, no greater penalty than that which would accomplish this purpose should be imposed. Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413 (1972); Louisiana State Bar Association v. Cox, 252 La. 978, 215 So.2d 513 (1968).
The record reflects respondent has had a pattern of commingling clients' funds over a period of years and has been cautioned against this practice. He has admitted this and testified that he will continue this practice. A violation of the Code of Professional Responsibility occurred and disciplinary action is necessary.
For the reasons assigned it is ordered, adjudged and decreed that Johnnie A. Jones be suspended from the practice of law for a period of six months.
BLANCHE, J., recused.
NOTES
[*] Blanche, J., recused.