PER CURIAM.
|, This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Johnnie Jones, Sr., an attorney licensed to practice law in Louisiana.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1958. In 1978, respondent received a private reprimand. In 1979, this court suspended respondent from the practice of law for six months after he engaged in a pattern of commingling client funds over the course of several years. Louisiana State Bar Ass’n v. Jones, 372 So.2d 1186 (La.1979) (“Jones I”).
In 2001, we considered a disciplinary proceeding involving respondent’s misconduct in wrongfully disbursing funds belonging to his client and failing to provide an accounting of his fee to another client. For this misconduct, we imposed a one-year suspension from the practice of law. We further ordered respondent to submit to fee arbitration for resolution of the client matters and to refund any improper or unearned fees. In re: Jones, 00-1939 (La.4/3/01), 787 So.2d 271 (“Jones II”). After serving his suspension, respondent was reinstated to the practice of law on April 6, 2004.
12Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
UNDERLYING FACTS
In July 2006, Hannah Lee Douglas Childs hired respondent to handle the succession of her deceased father, Wade Douglas.[1] On July 13, 2006, Ms. Childs paid respondent $5,000 and provided him with ten documents related to her father’s properties. On July 31, 2006, Ms. Childs provided respondent with additional documents relative to the estate’s property located in DeSoto Parish. Included in this initial information provided by Ms. Childs was a notice about mineral activity on the property.
On August 9, 2006, respondent wrote to the Commissioner of Conservation for the State of Louisiana advising of his representation of Ms. Childs and other family members for the purposes of attending a conservation hearing on August 15, 2006. On August 16, 2006, respondent wrote to Ms. Childs providing information he received during the hearing and advising her that he would order a “title abstract” with respect to the DeSoto Parish property. The following day, Ms. Childs paid respondent an additional $5,000. On August 23, 2006, respondent received the title abstract he had requested, for which he was billed $275.
In mid-September, respondent telephoned Ms. Childs and proposed that she give him a percentage of the oil, gas, and mineral royalties from the estate’s property as his legal fee. However, Ms. Childs declined such an agreement. On Septem *17 ber 25, 2006, respondent provided Ms. Childs with copies of orders issued by the Office of Conservation and conveyed to her an offer from Winchester Production Company to enter into an oil, gas, and mineral lease. On October 25, 2006, Ms. Childs wrote to respondent to terminate his representation and request a [ ¡¡copy of her file and an itemization of the work he performed on her behalf.[2] At this time, respondent still had not filed pleadings to open the succession.
On November 2, 2006, respondent wrote to Ms. Childs advising that “preparation of the succession proceedings is moving forward” and discussing the appointment of an administration for purposes of executing an oil, gas, and mineral lease with Winchester Production Company, who had contacted respondent the day before seeking assistance in opening the succession and having an administrator appointed for the purpose of executing the lease. On November 3, 2006, Ms. Childs wrote to respondent to confirm a telephone conversation wherein she demanded a refund of the fees paid, a return of documents she provided to him, and a copy of her file. Respondent did not comply with any of these requests, and on November 17, 2006, Ms. Childs filed a complaint with the ODC.
DISCIPLINARY PROCEEDINGS
In April 2009, the ODC filed formal charges against respondent, alleging he violated Rule 1.5(f)(5) (failure to refund an unearned fee) of the Rules of Professional Conduct. Respondent answered the formal charges, denying any misconduct. This matter then proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the chronology of events set forth in the underlying facts section above. The committee also made the following additional factual findings:
Respondent agreed to undertake the representation of Ms. Childs in connection with the succession of Wade Douglas. There was no written 14agreement, but Ms. Childs paid respondent $5,000, which respondent retained as an earned fee despite describing it as a “retainer.” Ms. Childs also sent respondent a significant amount of information regarding the Wade Douglas family and the estate’s property, including a notice about mineral activity on the property. Although respondent testified that he “discovered” there were minerals on the property, his knowledge came from information provided by Ms. Childs. Everything respondent did in connection with the representation focused on mineral rights and mineral interests instead of opening the succession, having an administrator appointed, compiling the detailed descriptive list, and sending the heirs into possession. No records were produced that established that, other than having the abstract prepared, respondent did anything except focus on the minerals.
Respondent principally communicated with Ms. Childs by letters dealing with the mineral interests, although occasional telephone conversations took place. Respondent’s assertion in his November 2, 2006 letter that the succession proceedings were progressing, at least in the sense of judicial activity to open the succession and having an administrator appointed, is not accurate. Furthermore, respondent either did not understand or disregarded the communication from Ms. Childs on Octo *18 ber 25, 2006 that his services had been terminated.
Regarding the funds paid to respondent by Ms. Childs, none of the funds were deposited into respondent’s trust account. Respondent was unequivocal in his testimony that he was entitled to consider the funds his when they were paid, despite the fact that he expected to charge an eventual fee based on the value of the succession. Even if respondent had not taken this position, he had no trust account in which to deposit the funds or to deposit the unearned portion of a disputed fee. Because respondent himself characterized the funds as a “retainer” and testified that he did not know what the ultimate fee would have been because the value of the succession was never determined, his argument that he earned the entire | r,amount is inconsistent with the provision of Rule 1.5 that requires attorneys to place client funds into a trust account until a fee is earned.
Respondent admitted that he has not provided Ms. Childs with an itemization of his work, nor has he returned her file. He testified that he does not keep itemized records of time spent working on a legal matter, but he kept Ms. Childs informed of the work he was doing. He also testified that he did not return Ms. Childs’ file because she already had all of the papers and information that were in his file. Neither of these explanations justifies respondent’s refusal to comply with these requests.
Respondent and Ms. Childs provided conflicting testimony regarding whether the $10,000 should be refunded. There is a clear dispute as to whether (or what amount of) the fee was earned in this case, what amount (if any) should be refunded, and what amount remains in dispute and should be placed in a trust account pending resolution of the dispute.
Based on the documentary evidence and respondent’s testimony, the committee determined that Ms. Childs did not receive $10,000 worth of work. While respondent did undoubtedly do some work in the matter, he never filed documents to open the succession, never sought appointment of an administrator, never filed a detailed descriptive list, and never petitioned the court for a judgment of possession. At the very least, having an administrator appointed should have been accomplished early on. Based on the documentary evidence and testimony, respondent earned, at best, a fee of $2,500. Ms. Childs and the other heirs, in all likelihood, received a higher royalty percentage from mineral production than they might have otherwise received due to respondent’s involvement. However, the succession was never opened or completed. Thus, upon termination, respondent should have returned Ms. Childs’ file, provided her with the requested itemization, and either returned at least $7,500 to Ms. Childs or deposited that sum into his trust | (¡account and undertaken efforts to resolve the fee dispute. Respondent did none of this. Thus, the committee determined he violated Rule 1.5(f)(5) of the Rules of Professional Conduct, as alleged in the formal charges.
Turning to the issue of an appropriate sanction, the committee determined that suspension is the baseline sanction for respondent’s misconduct, based on the ABA’s Standards for Imposing Lawyer Sanctions. In aggravation, the committee cited respondent’s prior disciplinary history, a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law (admitted 1953), and respondent’s failure to maintain a trust account. In mitigation, the committee found respondent lacked a dishonest or selfish *19 motive and had no intent to convert his client’s funds.
Under these circumstances, the committee recommended respondent be suspended from the practice of law for three years, with all but one year and one day deferred. Additionally, the committee recommended the following as conditions to the filing of any petition for reinstatement by respondent:
1. Respondent engage in fee dispute arbitration through the program provided by the Louisiana State Bar Association and satisfy in full any award in favor of Ms. Childs;
2. Respondent demonstrate that he has established a trust account;
3. Respondent complete Trust Accounting School; and
4. The court authorize the ODC, at its discretion, to audit respondent’s financial records to ensure future compliance with the Rules of Professional Conduct.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation. However, in his brief to the disciplinary board, respondent admitted that although he may have “technically” violated Rule 1.5(f)(5), the violation does not warrant discipline.

_J¿Disciplinary Board Recommendation

After review, the disciplinary board determined the hearing committee’s factual findings are not manifestly erroneous. The board also determined the factual findings support the conclusion that respondent violated Rule 1.5(f)(5) of the Rules of Professional Conduct as alleged in the formal charges. Whether the fee was an advanced fee (as respondent described it) or a fixed fee (as Ms. Childs described it), respondent would be responsible for returning any unearned portion pursuant to the provisions of Rule 1.5(f)(5). The record contains only a few letters prepared by respondent, respondent’s testimony that he attended one or two mineral conservation hearings, Ms. Childs’ notes of several telephone conversations with respondent, and a title abstract requested by respondent. Respondent did not file any pleadings to open the succession, which was the purpose of the representation. Therefore, the board determined respondent did not earn the entire $10,000 fee. Because he did not refund the unearned portion or place the disputed portion in a trust account, respondent violated Rule 1.5(f)(5).
The board further determined respondent knowingly, if not intentionally, violated duties owed to his client. He caused substantial harm to Ms. Childs in that she paid him a significant amount of money, but he did not complete the legal work she wanted done. Respondent has refused to refund any portion of the fee or attempt to resolve the fee dispute, and Ms. Childs testified that she cannot hire another attorney until she receives a refund from respondent. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is suspension.
The board found the following aggravating factors present: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct (in light of his prior misconduct), refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and indifference to making restitution. |RThe sole mitigating factor found by the board was remoteness of prior offenses, which only applies to respondent’s 1978 private reprimand and his misconduct in Jones I.
In light of these circumstances, the board recommended respondent be suspended from the practice of law for one year and one day. The board further *20 recommended respondent be ordered to participate in the fee arbitration process provided by the Louisiana State Bar Association and refund any portion of the fee as ordered by the arbitrator.
Respondent filed an objection to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this matter, respondent was hired to complete a succession but was discharged before doing so. In fact, at the time his services were terminated, respondent had not yet filed the pleadings to open the succession. Nevertheless, he refused to refund any portion of the $10,000 the client paid him, claiming he earned the entire amount despite having no evidence of how much time he spent |9working on the succession. Based on these facts, respondent has violated Rule 1.5(f)(5) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly, if not intentionally, violated duties owed to his client. In failing to resolve the fee dispute, respondent has deprived Ms. Childs of her funds for several years, causing significant harm. The baseline sanction for this type of misconduct is suspension.
Numerous aggravating factors are present, including prior disciplinary offenses, a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and indifference to making restitution. The sole mitigating factor present is the remoteness of prior offenses but only with respect to respondent’s 1978 private reprimand and his misconduct in Jones I.
We find the appropriate sanction for respondent’s misconduct is a three-year suspension from the practice of law, with all but one year deferred. Following the active portion of his suspension, respondent shall be placed on supervised probation for a period of two years. As a condition of probation, respondent is ordered to submit to fee dispute arbitration in the Childs matter and refund any unearned fees as determined by the arbitrator. We caution respondent that any | mviolation of the conditions of probation, or any misconduct during the probationary period, may be grounds for making the *21 deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Johnnie Jones, Sr., Louisiana Bar Roll number 8329, be and he hereby is suspended from the practice of law for three years. It is further ordered that all but one year of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on supervised probation for two years. As a condition of probation, respondent is ordered to submit to fee dispute arbitration in the Childs matter and refund any unearned fees as determined by the arbitrator. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, Justice, dissents.

. Ms. Childs’ father died intestate in 1982.

. Evidence in the record, namely the signed certified mail return receipt card, indicates respondent received this letter on November 3, 2006.